**Bruce R. MARTIN, Appellant,**

v.

**CREDIT PROTECTION ASSOCIATION, INC., Appellee.**

**No. 05–91–00137–CV**

Court of Appeals of Texas, Dallas.

Jan. 15, 1992.

James L. Hicks, Jr., Dallas, for appellant.

Robert A. Miller, Edwin Tobolowsky, Dallas, for appellee.

Before ROWE,[1] THOMAS and MALONEY, JJ.

## OPINION

THOMAS, Justice.

The issue in this case is whether a district court can grant relief additional to that provided in a mandate from the Texas Supreme Court. Following a successful appeal to the supreme court and that court's issuance of a mandate, Bruce R. Martin sought his attorney's fees and business expenses in district court. The district court denied the requested relief. In two points of error, Martin asserts that the district court erred. We hold that the district court correctly refused to grant additional relief not contained in the supreme court's mandate. We overrule the points of error and, accordingly, affirm the trial court's judgment.

## BACKGROUND

In 1985, Credit Protection Association, Inc. (CPA) sued Martin to enforce an employment covenant not to compete. The contract containing the restrictive covenant also provided for attorney's fees to the prevailing party in any litigation over the contract. Martin filed a counterclaim for unreimbursed business expenses incurred while employed by CPA. In 1986, the district court entered an interlocutory judgment that enforced the covenant not to compete, enjoined Martin for three years, and awarded CPA reasonable attorney's fees. A month later, at a hearing to determine the amount of attorney's fees, the court heard only evidence of CPA's attorney's fees. The court then signed a final judgment that awarded CPA $43,000 in attorney's fees, less an offset of $2,032.75.

This Court affirmed the judgment. 757 S.W.2d 24 (Tex.App.—Dallas 1988). The Texas Supreme Court reversed this Court's judgment, dissolved the injunction, held the restrictive covenant void in all respects, and rendered judgment that CPA take nothing. 793 S.W.2d 667, 668 (Tex.1990) (op. on reh'g). The supreme court's mandate stated:

1. .[B]ecause an individual has the right to engage in a "common calling" occupation, the judgment of the Court of Appeals is reversed.[2]

2. Judgment is rendered that the injunction is dissolved and the restrictive covenant is void in all respects.

3. Credit Protection Association, Inc. shall pay the costs in this Court, the Court of Appeals and the trial court.

4. Bruce R. Martin shall recover his costs in those courts from Credit Protection Association, Inc.

The mandate commands the district court "to observe the order of our said Supreme Court in this behalf, and in all things to have recognized, obeyed, and executed."

## GRANTING ADDITIONAL RELIEF FOLLOWING AN APPELLATE COURT'S MANDATE

■ In two points of error, Martin contends that the district court erred in denying his motions (1) for attorney's fees and (2) for recovery on his counterclaim. The thrust of Martin's argument is that he should receive the ancillary relief because it neither interferes with nor contradicts the mandate. He complains that, without his requested relief, he will have obtained a Pyrrhic victory from the supreme court.

■ We disagree that the district court should now afford Martin relief not granted in the supreme court's mandate. When an appellate court renders a judgment, the district court has no jurisdiction to review or to interpret it. "It must observe and carry out the mandate of the appellate

1. The Honorable Gordon Rowe, Justice, participated in this case at the time it was submitted for decision. Because of his resignation on December 2, 1991, he did not participate in the issuance of this opinion.

2. "Common calling" was the basis for the supreme court's first reversal in 1988. In 1990, upon motion for rehearing, the court withdrew that opinion and substituted the one found at 793 S.W.2d 667. Although "common calling" was not the basis for the supreme court's final reversal, the 1990 mandate contained this language.

court. Its orders carrying out the mandate are ministerial." *Myers v. Myers,* 515 S.W.2d 334, 335 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ dism'd w.o.j.) (citing *Conley v. Anderson,* 164 S.W. 985 (Tex. 1913)); *see also Schliemann v. Garcia,* 685 S.W.2d 690, 692 (Tex.App.—San Antonio 1984, no writ). The district court must observe the judgment as it was framed by the appellate court. *Conley,* 164 S.W. at 986. In *Conley,* the appellants had obtained a judgment from the Texas Supreme Court allowing them to make improvements to the Alamo. The appellees in district court then sought to have the appellants make reports of the sums spent. The supreme court ordered a writ of prohibition against the district judge stating that the interpretation of the judgment belongs exclusively to the supreme court and that the court would tolerate no interference with it. *Conley,* 164 S.W. at 986.

■ Martin argues that his requested relief does not violate these principles because it does not interfere with the mandate. Rather, he says, the relief is consistent with the mandate. To support his position, Martin cites several cases in which appellate courts reversed and remanded with specific instructions. Even in cases involving remand with specific instructions, the district court is limited to complying with the instructions and cannot relitigate issues controverted at the former trial. *Seydler v. Keuper,* 133 S.W.2d 189, 190 (Tex.Civ.App.—Austin 1939, writ ref'd). The district court's authority is limited to trying only those issues specified in the mandate. *V–F Petroleum v. A.K. Guthrie Operating Co.,* 792 S.W.2d 508, 510 (Tex. App.—Austin 1990, no writ); *Texacally Joint Venture v. King,* 719 S.W.2d 652, 653 (Tex.App.—Austin 1986, writ ref'd n.r.e.). For example, where an appellate court reversed and remanded a case for entry of a judgment nunc pro tunc, and a party then filed a motion for remittitur with the trial court, the trial court correctly denied the motion. The trial court had jurisdiction only to enter the nunc pro tunc judgment. "It did not have the jurisdiction to change the judgment in any other manner." *Wingfield v. Bryant,* 614 S.W.2d 643, 645 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.); *see also Los Campeones, Inc. v. Valley Int'l,* 591 S.W.2d 312, 313–14 (Tex.Civ.App.—Corpus Christi 1979, no writ) (a trial court's hearing and order after issuance of an appellate court's mandate exceeded the mandate's scope and involved more than ministerial duty of enforcing the judgment); *Brock v. Briggs,* 223 S.W.2d 645, 647 (Tex.Civ.App.—San Antonio 1949, no writ) (where an appellate court reversed and remanded with instructions for rendition of judgment, and motions were filed to set aside the judgment, the trial court was required to carry out the appellate court's direction).

Martin relies on *Texacally* for the proposition that "[a]s a practical matter, the trial judge must be allowed some reasonable exercise of discretion in fulfilling the terms of the mandate." 719 S.W.2d at 653. In *Texacally,* the mandate instructed the trial court to enter judgment ordering specific performance of a contract. 719 S.W.2d at 653. The court did so, allowing one week for the parties to comply, and the appellate court held that allowing a week to comply was not an abuse of discretion. *Texacally,* 719 S.W.2d at 653–54. We decline to extend the discretion discussed in *Texacally* to encompass the requested relief here. In *Texacally,* discretion as to a deadline was necessary for the trial court to fulfill the mandate's instruction concerning specific performance. Similarly, in *Bayoud v. Bayoud,* a trial court signed and entered orders and a final judgment after this Court's judgment instructed it to take no further actions regarding a corporation's receivership. 797 S.W.2d 304, 309 (Tex.App.—Dallas 1990, writ denied). On appeal, this Court held that the trial court was authorized to perform ancillary acts *necessary* to implement the appellate court's judgment and dispose of matters still pending in the case because the corporation's property was being held in the court's registry and had to be disposed of. *Bayoud,* 797 S.W.2d at 310. Unlike *Texacally* and *Bayoud,* Martin seeks affirmative relief additional to that given in the mandate and not necessary to its implementation.

Even if we allowed a trial court discretion in its ministerial duty of carrying out the terms of a mandate in a cause that was reversed and *rendered,* the terms of the mandate here are plainly stated: CPA shall pay the court costs, and Martin shall recover his court costs.[3] The mandate does not give Martin further relief. Granting additional relief would thus interfere with the mandate.

In addition, the supreme court's judgment was a final judgment over which the district court had no control. *See Jones v. Casualty Reciprocal Exch.,* 275 S.W. 279, 281 (Tex.Civ.App.—Texarkana 1925, writ ref'd) (district court had no authority to correct alleged error in award; correction, if any, should be made by court rendering the judgment, not by one whose duty it is to execute and obey judgment). The judgment is final not only in reference to the matters actually litigated, but as to all other matters that the parties might have litigated and had decided in the cause. "A party cannot try his action in pieces." *Corcanges v. Childress,* 280 S.W. 892, 894 (Tex.Civ.App.—Fort Worth 1926, no writ). We presume that, if the supreme court had meant for the district court to address Martin's additional claims for relief, it would have directed the district court to do so. *See* TEX.R.APP.P. 184.

Because the supreme court's judgment was final and because the mandate did not grant Martin the additional relief he seeks, we conclude that the district court was correct in denying Martin's motions. We overrule the two points of error and affirm the trial court's judgment.

---

3.  Martin does not contend that "Bruce R. Martin shall recover his costs" means he should recover his attorney's fees or business expenses. It is clear that this refers to court costs.