Eleanore **KENSETH**, Walter John Kowalski, Jack Beezley, and Charles Ben Howell, Appellants,

v.

**DALLAS COUNTY**, Dallas County District Clerk, and Timothy E. Kelley, Appellees.

No. 05–00–00037–CV.

Court of Appeals of Texas, Dallas.

Jan. 16, 2004.

Rehearing Overruled Feb. 26, 2004.

See also 984 S.W.2d 623.

Robert J. Reagan, Reagan and McLain, Tom S. McCorkle, McCorkle & Westerburg & Thornton, P.C., Dallas, for Appellant.

John Clark Long, IV, Asst. Dist. Atty., Scott Patrick Stolley, Thompson & Knight, P.C., Dallas, for Appellee.

Before Justices JAMES, FITZGERALD, and LANG.

## OPINION

Opinion By Justice FITZGERALD.

This appeal challenges trial court rulings in two related cases that have occupied the judicial system in one way or another since 1990. In the trial court's most recent proceedings, it distributed funds in its registry in both cases and entered sanctions orders against two trial court attorneys. Appellants challenge fourteen trial court orders and seek resolution of eight issues. We dismiss a number of the appeals for lack of jurisdiction; we reverse all or part of the remaining appealed orders; and we remand the case to the trial court for further proceedings not inconsistent with this opinion.

### BACKGROUND

Both lawsuits at issue in this appeal were filed by plaintiff-lawyers, complaining of certain fees the Dallas County District Clerk was collecting from their clients each time a divorce suit was filed. Both suits were litigated in the 14th Judicial District Court before the Honorable John M. Marshall. We set forth an abbreviated version of the procedural background of the two cases, including only the history necessary to give context to our conclusions.

### The 1990 Case: *Sweitzer v. Dallas County*

The first suit, *Sweitzer v. Dallas County*, was filed in 1990. Plaintiffs H. Averil Sweitzer and Walter Kowalski sued Dallas County and the Dallas County District Clerk (together, the "County") alleging the County was overcharging certain lawful filing fees and charging certain unlawful filing fees. The plaintiffs sought injunctive relief and statutory damages under the government code. Both forms of relief were granted in the trial court. On appeal, this Court disallowed the statutory damages, but it upheld a modified injunction. *See Dallas County v. Sweitzer*, 881 S.W.2d 757, 770–71 (Tex.App.-Dallas 1994, writ denied) (affirming injunction against collection of court reporter and sheriff fees). Sweitzer died during the pendency of the appeal.

On remand, the plaintiffs moved for judgment, and the trial court entered judgment awarding the plaintiffs actual damages, prejudgment and postjudgment interest, and attorney's fees. The County appealed this judgment, arguing the trial court had exceeded its jurisdiction by entering a new judgment that was contrary to the mandate issued by this Court, which "remanded no portion of this cause to the trial court for further proceedings, authorized no reconsideration of any issue, and directed no additional damages against Dallas County." *Dallas County v. Sweitzer*, 971 S.W.2d 629, 631 (Tex.App.-Dallas 1998, no pet.). This Court concluded the trial court had jurisdiction only to perform the ministerial acts necessary to execute the appellate mandate. Accordingly, we declared the trial court's judgment void and dismissed the appeal. *Id.*

Almost simultaneously with the above-described entry of the judgment that included a monetary recovery for the plaintiffs, the same plaintiffs filed a motion for contempt alleging the County was continuing to collect unlawful fees. The trial court imposed penalties of $500 per day against the County. In a mandamus action, the supreme court adjusted the time frame during which the continued collection of fees was punishable by fine, but otherwise upheld the trial court's contempt order. *See In re Bill Long*, 984 S.W.2d 623, 626–27 (Tex.1999) (per curiam). These contempt penalties totaled $137,000 by the time of the 1999 disbursement and provided the source of the recovery in the *Sweitzer* case that is at issue in this appeal.

Throughout all of these proceedings—in the trial court, this Court, and the supreme court—Sweitzer and Kowalski were represented by attorney Timothy E. Kelley. In June 1999, some six months after the supreme court's mandamus opinion issued, Kelley was fired by his clients and replaced by attorney Robert Reagan.[1] Following his discharge, Kelley filed a motion to substitute himself as the contempt movant in this case; the trial court granted that motion in August 1999. In early September, Kelley moved to disburse the contempt penalty, and the County deposited $137,000 in the registry of the court.

In response to Kelley's motion, the trial court disbursed the contempt penalty through a series of three orders, each of which has been appealed in this proceeding:

- the September 13, 1999 **Order Directing Disbursement of Penalty** [hereinafter, "*Sweitzer* Order No. 1"], which (a) awarded Kelley $114,166.67

---

1. At the same time, Kelley was fired by his clients in the *Essenburg* case, discussed below.

as his reasonable attorney's fee in the contempt proceeding, (b) awarded the Sweitzer Estate and Reagan $22,833.33 that was to be held in the registry of the court "pending further order," and (c) denied Kowalski recovery of any part of the penalty;

- the September 27, 1999 **Supplemental Order Directing Payment and Investment of Monies** [hereinafter, "*Sweitzer* Order No. 2"], which was based on the agreement of the parties, and which (a) awarded Kelley $87,000, and (b) awarded the Sweitzer Estate $50,000 that was again to be held in the court's registry pending further order;[2] and

- the May 22, 2000 **Order Granting Motion to Transfer Funds** [hereinafter, "*Sweitzer* Order No. 3"], which pronounced that "no appropriate claimant save and except Timothy E. Kelley" had made claim to the $50,000 in the registry of the court, and which granted Kelley's motion to transfer that amount, plus its accrued interest, to Kelley.

Accordingly, as of May 22, 2000, the entire contempt penalty had been awarded to Kelley. The initial grant (in *Sweitzer* Order No. 1, modified by *Sweitzer* Order No. 2) was characterized by the court as attorney's fees. The final transfer to Kelley of the $50,000 awarded to the Sweitzer Estate was not so characterized: the court's findings of fact and conclusions of law purport to make the transfer because "no one closer to the Sweitzer Estate" made a claim to the funds, and because—absent the award—the funds would have escheated to the State.

### The 1993 Case: *Essenburg v. Dallas County*

The second suit, *Essenburg v. Dallas County*, was filed in 1993. Plaintiffs Sweitzer, Kowalski, Randy Essenburg, John Mallios, and Leona Stone—all of whom were represented by Kelley—sued to recover the unlawfully collected fees paid by their clients in past divorce actions. The unlawfulness of the fees and the amount of those fees were not in dispute by this time. Accordingly, after a one-day trial, the jury was simply asked to determine how many cases each plaintiff had filed. The trial court multiplied that number by the amount of the unlawful fees to determine damages. The trial court also awarded Kelley almost $143,000 in attorney's fees, to be paid by the County.

On appeal, the damages awards were upheld by this Court, but the attorney's fees were not. *Dallas County v. Essenburg*, No. 05–95–01390–CV, 1999 WL 298314, at *4 (Tex.App.-Dallas May 13, 1999, pet. denied) (not designated for publication).[3] Following this decision, in June 1999, the plaintiffs fired Kelley, and Reagan pursued the issue of attorney's fees on the plaintiffs' behalf. The supreme court ultimately denied plaintiffs' petition for review. The County did not appeal the damages awards.

However, before the supreme court ruled on the petition for review, and before this Court's mandate issued, matters began to heat up in the trial court. The day he was fired, Kelley filed a motion seeking

---

**2.** The agreement also resolved a mandamus action filed by counsel for the Sweitzer Estate after the entry of *Sweitzer* Order No. 1.

**3.** The *Essenburg* appellees conceded there was no statutory basis for the award. They argued instead that the attorney's fees were appropriate under the equitable common fund doctrine. However, equitable fund fees must be charged against the common fund; these fees were charged against the appellants. Thus, this Court deleted the award of fees from the trial court's judgment.

to recover his fees, and, shortly thereafter, Kelley filed a motion to disburse the monies constituting the damages awards upheld by this Court. At the same time, issues arose concerning whether now-deceased plaintiffs Sweitzer and Stone were being properly represented in the action by Eleanore Kenseth (Sweitzer's mother) and Jack Beezley (Stone's brother and law partner), respectively. Neither estate had been administered through the probate court. Likewise, issues arose over appearances by and conduct of attorneys Reagan and Charles Ben Howell. (Howell appeared in the proceeding ostensibly as an advisor to Kenseth and a representative of the Sweitzer Estate.) On September 27, 1999, a number of these issues came to a head when the trial court entered its **Order Setting Hearing for Disbursement of Monies** [hereinafter, *"Essenburg* Order No. 1"], which ordered the County to deposit $643,737.55 into the registry of the court, notified the parties of an evidentiary hearing concerning the disposition of the funds, and ordered the party-estates to attend through "duly authorized, appointed and delegated administrators who are fully prepared and equipped to answer [the trial court's] directions and instructions and comply therewith or said Estate appearances and pleadings in this cause will be stricken." The next day, Kelley initiated proceedings in probate court asking for letters of administration to be issued to him for both Sweitzer and Stone; Kenseth and Beezley filed oppositions to his request.

By October, plaintiffs Essenburg, Mallios, and Kowalski had struck agreements with Kelley concerning their portions of the recovery. The trial court dealt with issues in the case with some measure of dispatch, entering all of the following orders during that month:

- the October 13, 1999 **Final Judgment and Final Order Disbursing Monies in Severed Action** [hereinafter *"Essenburg* Order No. 2"], which incorporated the settlement agreements among Kelley, Essenburg, and Mallios and ordered the balance of the fund held subject to the claims of the Sweitzer and Stone Estates and Kelley. The recoveries by Essenburg and Mallios were each divided into three categories: (a) approximately twenty-four percent to the plaintiff himself, (b) approximately sixteen percent to the plaintiff in trust for the repayment of his clients, and (c) approximately sixty percent to Kelley for his fees.[4] The order set up notice and reporting requirements for administering the trust funds; after twelve months, any remaining trust balance was to be paid to the Dallas Courthouse Computer Fund.

- the October 13, 1999 **Order Granting Motion to Sever** [hereinafter *"Essenburg* Order No. 3"], which severed out Essenburg and Mallios.

- the October 14, 1999 **Order on Kelley's Motion for Attorneys' [sic] to Show Authority** [hereinafter, *"Essenburg* Order No. 4"], which declared all pleadings, motions, and arguments on behalf of the Sweitzer and Stone Estates "suspended and held for nought" because those individuals purporting to represent the estates had no authority to do so. The trial court granted each estate twenty days to present a "duly qualified Administrator" and specifically noted that any award to an estate would be subject to

---

4. Kelley's fee award from Essenburg totaled $214,071.78; his fee award from Mallios totaled $25,554.27.

an attorney's fees claim by Kelley. The court also specifically found that Reagan and Howell had "indulged in frivolous pleadings, Applications for Writ of Mandamus and Appeals to the Supreme Court of Texas and to the Dallas Court of Appeals," but it reserved the issue of sanctions "for another order."

- the October 21, 1999 **Nunc Pro Tunc and Corrected Final Judgment and Final Order Disbursing Monies in Severed Action** *Essenburg and Mallios v. County of Dallas* [hereinafter, "*Essenburg* Order No. 5"], which restated and confirmed the settling parties' agreement in the severed action.

- the October 22, 1999 **Order of Disbursement of "Essenburg Funds"** [hereinafter, "*Essenburg* Order No. 6"], which ordered the County to pay Essenburg his share of the settled amount without delay.

As November 1999 began, then, only the estate-plaintiffs remained in the *Essenburg* action, and the representatives of those estates had been challenged by Kelley. On November 4, 1999, the trial court entered two more orders:

- the **Order Striking Pleading Nominated as Motion for New Trial** [hereinafter, "*Essenburg* Order No. 7"], which struck the plaintiffs' motion challenging *Essenburg* Orders No. 3 through 6, and which cited, *inter alia*, the purportedly unauthorized representation of the estates by heirs and by attorney Reagan.[5]

- the **Final Order Concluding Claims of the Estates of Sweitzer and Stone** [hereinafter, "*Essenburg* Order No. 8"], which announced the trial court's conclusion that the estates had defaulted by failing to comply with its *Essenburg* Order No. 4, and which awarded recoveries earlier designated for the two estates to Kelley instead. The awards were made in the same format as the settlement awards to the other plaintiffs: part to Kelley for fees, part to the clients of the estates in trust (with Kelley designated trustee), and part to Kelley himself in the place of the estates. The trial court appended a show cause order requiring Howell and Reagan to appear and show why they should not be held in contempt.

The related issues of sanctions and contempt had loomed for some time in these *Essenburg* proceedings. Because the dates of the various actions are significant, we trace them with specificity. On October 14, 1999 (in *Essenburg* Order No. 4), the trial court specifically identified sanctionable conduct on the part of Reagan and Howell—the filing of frivolous pleadings—but it reserved the actual imposition of sanctions. On November 3, plaintiffs filed a motion for new trial, and on November 4 (in *Essenburg* Order No. 7), the trial court struck the motion, calling it frivolous as well. Later that same day, the trial court entered its final judgment (in *Essenburg* Order No. 8) and appended the show cause order identifying two possible contempt issues: (a) Howell's practicing law;[6] and (b) both Howell's and Rea-

---

**5.** *Essenburg* Order No. 7 states that "by appropriate Order and due to the noted defaults [by the estates], this Court has concluded this cause fully, finally and completely." The court was clearly referring to the Final Order Concluding Claims of the Estates of Sweitzer and Stone, entered that same day.

**6.** Howell was at the time a Senior Judge in Dallas County, prohibited by ethical rules from practicing law.

gan's "ignoring the court's orders and ... filing spurious, inaccurate and incomplete pleadings herein." This order initiated a full-blown contempt proceeding, which was heard on December 2 by Judge Pat McDowell. Judge McDowell found both Reagan and Howell guilty of contempt, and he issued findings of fact and conclusions of law stating Howell had practiced law in the *Essenburg* proceedings and both attorneys had filed frivolous pleadings. The contempt judgment sentenced the attorneys to five days in jail. This Court granted Reagan's writ of habeas corpus on June 16, 2000, concluding the show cause order did not adequately notify him of his allegedly contemptuous acts. *See In re Robert J. Reagan*, No. 05-00-00651-CV, 2000 WL 772816, at *2 (Tex.App.-Dallas June 16, 2000, orig. proceeding) (not designated for publication). The trial court subsequently vacated its contempt judgment as to Howell.

As to the substantive (i.e., non-contempt) portion of *Essenburg* Order No. 8, plaintiffs filed a timely motion for new trial on December 6, 1999. The trial court entered no order on the motion for new trial; accordingly, the motion was overruled by operation of law on January 18, 2000. Meanwhile, on December 10, 1999, Kelley filed a Motion for Monetary Sanctions, which was later amended in response to plaintiffs' special exceptions. The motion was heard on February 3, 2000, and on February 24, the trial court entered its **Order Granting Monetary Sanctions** [hereinafter, "*Essenburg* Order No. 9"], which adopted the fact findings of Judge McDowell's contempt proceeding and ordered Reagan and Howell—jointly and severally—to pay Kelley $40,000 and the County $25,000 as sanctions for the "expenses and inconvenience" caused by the filing of inappropriate pleadings. On March 24, Reagan filed his Motion for New Trial or to Modify, Reform, Correct

or Vacate Order Granting Sanctions, and Howell filed a Motion for New Trial and in Arrest of Judgment. The same day, the defendants filed a motion to strike both of these motions, and Kelley moved for additional sanctions. The court heard Kelley's motion on April 5, and on April 7, entered its **Order Granting Kelley, County of Dallas and Dallas County District Clerk's Motion to Strike and/or Deny Reagan's Motion for New Trial or to Modify, Reform, Correct or Vacate Order Granting Monetary Sanctions and Howell's Motion for New Trial and in Arrest of Judgment, Etc. and Kelley's Motion for Sanctions** [hereinafter, "*Essenburg* Order No. 10"], which awarded an additional $500 to Kelley in sanctions for his "expenses and inconvenience occasioned by the filing of the [two motions for new trial]." Again, the sanctions were entered against Reagan and Howell, jointly and severally.

Finally, on May 22, 2000, Kelley—now charged with locating Sweitzer's clients—filed a motion to transfer the files of Avery Sweitzer to Kelley's office. On the same day, the trial court entered its **Order [to Transfer Sweitzer's Files]** [hereinafter, "*Essenburg* Order No. 11"], which granted Kelley's motion to take possession of the files.

### This Appeal

A total of four notices of appeal are at issue in this appeal. In *Sweitzer*, Kowalski and Kenseth appealed *Sweitzer* Orders No. 1 through 3.

In *Essenburg*, Kenseth and Beezley appealed *Essenburg* Orders No. 1 through 8. Howell and Reagan appealed *Essenburg* Orders No. 1 through 10. And Kenseth separately appealed *Essenburg* Orders No. 1 through 11.

The appeals were eventually consolidated under the current cause number. While the appeal was pending, Kelley and the County settled their claim for sanctions from Reagan, and Reagan dismissed his appeal. In June 2003, Howell died.

## APPELLATE JURISDICTION

Our first task is to determine precisely what parties and what orders are properly before us. Kelley raises a number of threshold challenges to this Court's jurisdiction. These challenges require analyses that sometimes overlap with the substantive merits of the appeal, including appellants' own challenges to the jurisdiction of the trial court. Although the jurisdictional calculus is quite long and moderately complex, it resolves a significant portion of this appeal.

## Proper Parties

As a threshold matter, we determine which parties are actually before the Court. Simply put, not all parties below are parties to this appeal. Kelley specifically challenges the appellate status of two plaintiffs below: Beezley and Kowalski. Beezley was included as the representative of the Stone Estate in the notice of appeal filed in *Essenburg* by Reagan. That notice purported to appeal eight different orders.[7] However, on June 19, 2003, Beezley filed an affidavit in this Court declaring he is not a party to this appeal and has no interest in the subject matter of the appeal. The affidavit is not part of the appellate record. However, this Court can look to affidavits outside the record to determine its own jurisdiction. TEX. GOV'T CODE ANN. § 22.220(c) (Vernon 1988); *Sa-*

bine Offshore Serv., Inc. v. City of Port Arthur, 595 S.W.2d 840, 841 (Tex.1979); *Jones v. Griege*, 803 S.W.2d 486, 488 (Tex. App.-Dallas 1991, no writ). Based on Beezley's affidavit, we dismiss the appeal purportedly taken on his behalf.

Kowalski was included in the notice of appeal filed in *Sweitzer* by Howell. That notice purported to appeal all three controverted orders in that case. Kowalski has not filed an affidavit or taken any other affirmative step to extract himself from this appeal. Kelley complains that the notice of appeal was not signed by an attorney for Kowalski; the signature block identifies Howell as "Attorney for Eleanore Kenseth." But even Kelley concedes this oversight does not rob the Court of jurisdiction. Kowalski is a party to the appeal, subject to other threshold issues such as timeliness and standing, discussed below.

■ We address as a practical matter the status of Howell, who appealed ten of the eleven *Essenburg* orders.[8] Howell died after he filed appellants' brief. The rules of appellate procedure provide that if a party to a civil appeal dies during the pendency of an appeal, this Court will adjudicate the appeal "as if all parties were alive." TEX.R.APP. P. 7.1(a). If the death of the party results in the end of any controversy between the parties, then the appeal is rendered moot and is dismissed. *See, e.g., Olson v. Comm'n for Lawyer Discipline*, 901 S.W.2d 520, 524 (Tex.App.-El Paso 1995, no writ) (lawyer's serving of probationary period only issue on appeal; because probation could not be served, appeal did not survive lawyer's death). However, if a claim remains that involves

---

7. Of the eleven *Essenburg* orders at issue in this appeal, Beezley appealed all except the two sanctions orders (*Essenburg* Orders. No. 9 and 10) and the order to transfer Sweitzer's files (*Essenburg* Order No. 11).

8. Howell did not appeal *Essenburg* Order No. 11, which required the transfer of Sweitzer's files to Kelley.

the property rights of the parties, then the claim survives the death of a party. *Casillas v. Cano,* 79 S.W.3d 587, 591 (Tex.App.-Corpus Christi 2002, no pet.). Howell's appeal, at a minimum, involved sanctions awards of $65,500 to be paid jointly and severally by Howell. Accordingly, the appeal was not mooted by his death. *See id.* at 592 (appeal of judgment for more than $300,000, payable jointly and severally by deceased appellant, "obviously" affected property rights so appeal was not mooted by her death). Howell's appeal remains viable, subject to the same threshold issues of timeliness and standing.

Finally, we note again that Reagan, though a party initially, has settled his claims with Kelley and the County. Accordingly, he is no longer before this Court.

### Standing

This appeal raises two types of standing issues: (1) whether some parties have attempted to appeal orders in which they have no justiciable interest, and (2) whether Kenseth is an appropriate substitute party for her deceased son, Sweitzer.

### *Justiciable Interest in Order*

■ A party may only appeal orders in which he has a justiciable interest. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 844 (Tex.2000) (referring to court's "well-established rule that, to appeal an alleged error, a party must show that the error injuriously affects it"); *Phelan v. Phelan,* 471 S.W.2d 605, 608–09 (Tex.Civ. App.-Beaumont 1971, no writ) (citing "fundamental rule of procedure that one may not complain of errors in a judgment which do not injuriously affect him or which merely affect the rights of others"). Based upon the above analysis of proper parties, any standing issues involving either Reagan or Beezley have been ren-

dered moot. We address the remaining appellants in turn and identify any appealed-from orders in which that appellant lacks a justiciable interest.

■ Kowalski has appealed the three orders in *Sweitzer. Sweitzer* Orders No. 1 and 2 divide the contempt penalty between the Sweitzer Estate and Kelley and exclude Kowalski from any recovery. Certainly Kowalski had an appealable interest in these orders. However, the third order merely transfers the award already earmarked for the Sweitzer Estate to Kelley. We conclude Kowalski lacks standing to complain of *Sweitzer* Order No. 3, and we dismiss that portion of his appeal.

■ Kenseth has appealed all fourteen orders in the two cases. We conclude she lacks standing based on an appealable interest in two sub-groups of these orders: (1) *Essenburg* Orders No. 3, 5, and 6, which deal with the agreed awards made to Essenburg and Mallios and the severance of those plaintiffs from the main suit; and (2) *Essenburg* Orders No. 9 and 10, which assess sanctions against Howell and Reagan. We dismiss Kenseth's appeals of those orders.

■ Howell has appealed all the orders from *Essenburg* except the final one ordering Sweitzer's files transferred to Kelley. Unquestionably, Howell had standing to appeal *Essenburg* Orders No. 9 and 10, the two actual sanctions orders. We conclude Howell also had standing to appeal *Essenburg* Order No. 4, which makes a specific finding of misconduct against him, but states that it leaves sanctions for further order. We conclude Howell lacked standing to appeal *Essenburg* Orders No. 1, 2, 3, 5, 6, 7, 8, and 11; we dismiss his appeals from those orders.

### *Kenseth as Representative of Sweitzer's Estate*

Kelley continues to challenge Kenseth as a proper representative of the Sweitzer

Estate.[9] The trial court disallowed any recovery to the Sweitzer Estate through Kenseth because she was not appointed by the probate court as the duly authorized representative of that estate. If Kenseth was a proper substitute plaintiff for her son in the trial court, then she has standing to bring this appeal.

■ The record indicates Kelley represented Sweitzer from the initiation of the *Sweitzer* and *Essenburg* suits, in 1990 and 1993 respectively. Sweitzer died on January 6, 1994, while *Sweitzer* was on appeal and *Essenburg* was still in the trial court. Kelley continued to represent Sweitzer's interest despite the fact that no representative of his estate was appointed. Indeed, Kelley represented Sweitzer's interests until Kelley was fired in June 1999. Soon after that, Kelley (with the approval of the trial court) "substituted" himself as the contempt movant in *Sweitzer* and filed a motion to recover his attorney's fees in *Essenburg*. Only then did Kelley file his Motion for Attorneys to Show Authority to act for the estates. Although the title of the motion correctly suggested the motion was addressed to the authority of Howell and Reagan to represent the Sweitzer Estate, the basis of Kelley's argument was that those attorneys had not been retained by a duly authorized representative of the estate. Thus, the motion challenged not only the status of Howell and Reagan, but also the status of Kenseth herself. In response to the motion, Kenseth filed an affidavit asserting that she was the sole heir of Sweitzer, that no administration of her son's estate was pending, and that none was necessary. Kenseth testified, *inter alia*, that Sweitzer had no outstanding debts, that there were no unpaid estate or inheritance taxes, and that Sweitzer

owned no real property. Nevertheless, the trial court granted Kelley's motion, stating "it is now apparent" that Kenseth had been acting without authority. As a result of this ruling, the trial court declared Sweitzer's recovery defaulted and awarded that recovery to Kelley instead. The fundamental question for us is whether Kenseth, absent authorization from the probate court, could be an appropriate substitute party to the litigation for her son. The evidentiary corollary to that question is whether Kenseth sufficiently established that she was an appropriate substitute party in the trial court when ordered to do so by the court. We answer yes to both questions.

■ Rule 151 of the rules of civil procedure begins by stating, "If the plaintiff dies, *the heirs*, or the administrator or executor of such decedent may appear ..." TEX.R. CIV. P. 151 (emphasis added). Thus, the rules clearly contemplate some situation in which the heir of a plaintiff may substitute for that plaintiff in a pending suit. Kelley relies upon the general rule that an estate administrator has the exclusive right to sue for recovery of estate property. He cites *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex.1971). However, immediately after *Frazier* sets forth that general rule, it describes the exception to the general rule that pertains to this case: "Before the heirs at law can maintain such a suit during the four-year period allowed by law for instituting administration proceedings, they must allege and prove that there is no administration pending and none necessary." *Id.* at 752. Likewise, Kelley cites *Wilder v. Mossler*, 583 S.W.2d 664 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ), for the general rule of an administrator's exclusive right to sue; but *Wil-*

---

9. The identical challenge was posed as to Beezley's representation of the Stone Estate. However, because Beezley has disclaimed any interest in this appeal, we need not decide the issue in his case.

*der* also identifies the exception to the general rule when no administration is required. *Id.* at 668; *see also Casillas,* 79 S.W.3d at 591 ("An heir would be the appropriate party when there is no executor or administrator."). The relevant rule, then, is well-settled: if no estate administration is pending and none is necessary, the plaintiff's heir may appear in the case on the plaintiff's behalf. *See Frazier,* 472 S.W.2d at 752; *Casillas,* 79 S.W.3d at 591; *Wilder,* 583 S.W.2d at 668; *see also Jansen v. Fitzpatrick,* 14 S.W.3d 426, 433 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

In this case, Kenseth's appearance on behalf of her deceased son was not challenged until Kelley filed his motion to show authority. In response to that motion, Kenseth filed an affidavit establishing that she was the sole heir of Sweitzer, that no administration was pending, and that none was necessary.[10] We find no evidence in the record controverting these facts. We conclude that Kenseth's response to the motion to show authority was sufficient to show she was a proper substitute plaintiff under rule 151. Accordingly, she is also a proper appellant, with standing to represent the Sweitzer Estate in this Court.

### Timeliness

When these two appeals were first consolidated, this Court made an initial inquiry concerning appellate jurisdiction based on concerns of timeliness of the various notices of appeal. A notice of appeal is timely if it is filed within thirty days after the judgment or order is signed. Tex. R.App. P. 26.1(a). If a motion for new trial or a request for findings of fact and conclusions of law is timely filed then the deadline for a timely notice of appeal is extended until ninety days after the judg-

ment is signed. Tex.R.App. P. 26.1(b). In this case, appellants filed untimely notices of appeal from *Sweitzer* Orders No. 1 and 2, and from *Essenburg* Orders No. 1, 2, 3, 5, and 6.

Appellants do not argue the notices were timely under the rules. Instead, appellants argue that the orders appealed from are void because the trial court lacked jurisdiction to enter them when it did. Appellants argue that void orders can be collaterally attacked at any time, including a time that would otherwise be too late under the rules. In effect, appellants argue, the appellate timetable is "trumped" by the rule that void judgments can be collaterally attacked. We do not, at this point, address the issue of whether or not any particular trial court order is void. The question with regard to appellate jurisdiction is solely whether—if an order *were* void—a collateral attack may be made upon it in an untimely taken appeal.

We note at the outset that a "collateral attack" is traditionally understood as:

> an attempt to impeach a judgment offered as evidence of some right, ... and as an attempt to avoid [a judgment's] binding force in a proceeding not instituted for the purpose of correcting, modifying or vacating it, but in order to obtain some specific relief against which the judgment stands as a bar.

*Harris v. Balderas,* 27 S.W.3d 71, 74 (Tex. App.-San Antonio 2000, pet. denied) (internal citations and quotation marks omitted). Thus, a collateral attack is traditionally brought in a separate proceeding. An appeal of an order in the same proceeding— brought "for the purpose of correcting, modifying or vacating" that order—is a

**10.** Kenseth's notices of appeal also provide these facts to this Court.

direct attack on the order, not a collateral one.

Appellants cite three cases as authority for their unique application of the collateral attack rule: *Starnes v. Holloway*, 779 S.W.2d 86 (Tex.App.-Dallas 1989, writ denied); *Dews v. Floyd*, 413 S.W.2d 800 (Tex.Civ.App.-Tyler 1967, no writ); and *Holder v. Scott*, 396 S.W.2d 906 (Tex.Civ.App.-Texarkana 1965, writ ref'd n.r.e.). We agree with the general principle found within these cases that a void judgment is a nullity and that it may be impeached in either a direct or collateral action. However, none of these cases addresses an appeal of a purportedly void judgment that was untimely taken. Nor do any of the cases state, as appellants argue, that if one order is appealed timely, all related orders can be collaterally attacked in the same appeal regardless of timeliness.

Our research shows that *Estate of Mitchell*, 20 S.W.3d 160 (Tex.App.-Texarkana 2000, no pet.), is a much closer case to this one than those cases appellants cite. In *Mitchell*, the ownership of the decedent's house was at issue. The trial court rendered judgment declaring certain parties to be co-owners of the house. The court then ordered the house to be sold. Two parties contested the sale after the fact, but the trial court issued another order confirming the sale. *Id.* at 161. One of the parties appealed, assigning error to the partitioning of the house and to the confirmation of its sale. The court of appeals stated the partition order was a final appealable order, and the appellant had not timely appealed that order. *Id.* The court cited rule 26.1 and stated the appellant "cannot now collaterally attack the order that she failed to timely appeal." *Id.* at 162. Likewise, we conclude appellants cannot—in this proceeding—collaterally attack orders that they failed to appeal in a timely way. The untimely appealed orders are simply not before this Court, and we dismiss the appeals from those orders.

### Appellate Jurisdiction Summary

Having reviewed Kelley's challenges to this Court's jurisdiction, and having ruled as set forth above, we conclude the appeals by the following parties of the following orders remain before this Court:

- Kenseth's appeal of *Sweitzer* Order No. 3;
- Howell's and Kenseth's appeals of *Essenburg* Order No. 4;
- Kenseth's appeal of *Essenburg* Order No. 7;
- Kenseth's appeal of *Essenburg* Order No. 8;
- Howell's appeal of *Essenburg* Order No. 9;
- Howell's appeal of *Essenburg* Order No. 10; and
- Kenseth's appeal of *Essenburg* Order No. 11.

Because only one brief was filed in this Court on behalf of all appellants, we will continue to refer to appellants collectively. However, we will address appellants' briefed issues only in terms of this list of the remaining viable appeals.

### APPELLANTS' ISSUES ON APPEAL

Appellants bring eight issues on appeal. We discuss them in clusters based on related legal issues: the extent of the trial court's jurisdiction, the trial court's denial of any recovery by Kenseth on behalf of the Sweitzer Estate, and the trial court's award of both fees and Sweitzer's share of the recovery to Kelley.

### Trial Court Jurisdiction

Appellants challenge the trial court's jurisdiction to enter the orders it did in a number of their issues on appeal.

## Orders Issued Pre–Mandate

The *Essenburg* judgment was entered in 1995. This Court subsequently upheld the trial court's award of actual damages but reversed its award of attorney's fees. The attorney's fees portion of the judgment was appealed and was still pending before the supreme court in September 1999, when the trial judge began issuing orders related to the disbursement of the monies in the court's registry. The appellate court's mandate did not issue until April 11, 2000. In their first issue, appellants argue that any order signed by the trial court before the mandate issued is void. If appellants are correct, all *Essenburg* orders except the May 22, 2000 order to transfer Sweitzer's files would be void.

■■■ We conclude appellants are incorrect for at least two reasons. First, when these pre-mandate orders were issued, the judgment as to the damages awards had been finally affirmed by this Court; no appeal had been taken from that portion of the judgment. Only the award of attorney's fees to Kelley—to be paid by the County—remained at issue on appeal. The trial court's disbursement of funds in payment of the damages portion of the judgment could not have interfered with the attorney's fees portion of the judgment on appeal: the awards were not tied to one limited fund or to each other. A trial court's pre-mandate action is void only if it creates an "actual interference with the appellate court's active power and authority over a case." *Cont'l Cas. Co. v. Street*, 364 S.W.2d 184, 187–88 (Tex.1963). Appellants' reliance upon *Robertson v. Ranger*, 689 S.W.2d 209 (Tex.1985) is misplaced. *Ranger* stands for the principle that a trial court cannot *change* its judgment while that judgment is on appeal.

*Id.* at 210 (declaring new consent judgment void because entered while original judgment on appeal). The trial court in *Essenburg* could not run afoul of this principle because the damages portion of its judgment was no longer on appeal when the trial court undertook to disburse funds. No action of the trial court in disbursing the damages awards could interfere with the supreme court's review of the attorney's fees portion of this Court's judgment.

■■ We also agree with the County's argument on this point. The judgment in *Essenburg* had been superseded by the County's notice of appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 6.001 (Vernon 2002) (governmental entity is exempt from requirement of bond). Once the award of damages was upheld on appeal, the County decided to stop the accumulation of interest on the judgment and tendered the amount it owed into the registry of the court, asking for that amount to be distributed. When a judgment is no longer superseded, execution can be had. The trial court always has authority to enforce its judgments and to disburse money held in its registry. *See, e.g., Young v. Young*, 810 S.W.2d 850, 851 (Tex.App.-Dallas 1991, writ denied) ("Broad discretion vests in the trial court in enforcing its judgments."); *see also Burns v. Bishop*, 48 S.W.3d 459, 467 (Tex.App.-Houston [14th Dist.] 2001, no pet.) ("Funds on deposit in the registry of a trial court are always subject to the control and order of the trial court, and the court enjoys great latitude in dealing with them."). Accordingly, we conclude the trial court had authority to issue orders in enforcement of its judgment once the County deposited its funds in the registry of the court in September 1999.[11]

---

11. At this point in the analysis, we do not address the manner in which the trial court disbursed the funds in its registry, only its right to disburse them when the mandate has

*Orders Outside the Scope of the Mandate*

In their second issue, appellants argue alternatively that *Essenburg* Orders 1 through 11 were *outside* the appellate court's mandate. According to appellants, the *Essenburg* mandate, once issued, "neither authorized nor permitted any of the actions of which appellants complain." Appellants rely upon *Sweitzer,* 971 S.W.2d 629, which reversed the trial court's earlier efforts to award damages, fees, and interest in the injunctive portion of the litigation. In that opinion, this Court chastised the trial court for awarding "additional relief" from that found in the appellate court's opinion and mandate. *See id.* at 631. Appellants argue that the trial court's orders appealed herein violate the *Essenburg* mandate in the same fashion forbidden in *Sweitzer.*

■ We see a distinction between the trial court's orders disbursing funds in *Essenburg* and the court's earlier monetary award in the *Sweitzer* case. In the latter case, the only judgment upheld by the appellate court was for injunctive relief; no monetary award of any sort had been approved, and yet the trial court made such an award. Clearly, the trial court was acting outside its jurisdiction by doing so. In *Essenburg,* however, the mandate required disbursement of the funds in the registry of the court. Therefore, the trial court must have had jurisdiction to make disbursement orders. So long as the trial court has jurisdiction over the parties and the subject matter at issue (here, the funds in its registry), the order at issue is not void. *Buruato v. Mercy Hosp. of Laredo,* 2 S.W.3d 385, 387 (Tex.App.-San Antonio 1999, pet. denied) (citing *State ex rel. Latty v. Owens,* 907 S.W.2d 484, 485 (Tex. 1995), and noting that "mere failure to

follow proper procedure will not render a judgment void"). The question of whether the court abused its discretion in making the disbursements as it did is a substantive one for this Court. We deny appellants' jurisdictional challenge on this ground as well.

### Orders Issued Outside the Court's Plenary Power

■ In their eighth issue, appellants argue that *Essenburg* Orders No. 9 and 10, which imposed sanctions against Howell, are void because the trial court was operating outside its plenary power when it signed those orders. Appellants argue that the final order in the *Essenburg* case—the order that disposed of all the parties and all the issues—was the November 4, 1999 *Essenburg* Order No. 8. Reagan filed a timely motion for new trial after that order was entered. The motion was overruled by operation of law on January 18, 2000. As a result, appellants argue, the trial court lost its plenary power in this case on February 17, 2000, thirty days after the motion for new trial was overruled. *See* TEX.R. CIV. P. 329(b). The trial court issued three orders after that date: the two sanctions orders and the order transferring Sweitzer's files. The general rule is that judicial action taken after the trial court's plenary power has expired is void. *In re T.G.,* 68 S.W.3d 171, 177 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

■ We are persuaded by appellants' argument on this point. We agree that *Essenburg* Order No. 8—titled the "Final Order Concluding Claims of the Estates of Sweitzer and Stone"—represented the final resolution of the parties and issues in that case.[12] All of the other plaintiffs had

---

not been returned to the trial court because of the separate appeal of an independent issue.

**12.** We note that the trial court apparently considered it the final order as well. *See* footnote 5, *supra.*

settled their claims when Order No. 8 was signed, and all pleaded issues were resolved when it was signed. We also agree that the trial court lost its plenary power on February 17, 2000.[13]

Kelley's only responsive argument on this point avers that each of the postjudgment orders—including the sanctions orders—is an independent, appealable order, so none is tied to another for purposes of determining plenary power. Kelley cites no authority for this proposition, and we have found none. We agree that postjudgment orders embodying awards to claimants or enforcing the court's judgment itself are appealable orders; they function like judgments. However, a sanctions order is not like a judgment. *Jobe v. Lapidus,* 874 S.W.2d 764, 765 (Tex.App.-Dallas 1994, writ denied). A sanctions order must be tied to the portion of the proceedings in which the sanctionable conduct occurred. In this instance, all the conduct sanctioned by the trial court in *Essenburg* Order No. 9 occurred prior to the entry of the court's final order, *Essenburg* Order No. 8.[14] Therefore, both the conduct and the resulting sanctions were tied to the court's power to issue the order

disbursing the funds in its registry as required by its mandate. Once the court's plenary power over that portion of the postjudgment proceedings had expired, the court had no more power to sanction for conduct within those proceedings. *See id.* at 766 (motion for sanctions does not survive expiration of court's plenary jurisdiction); *see also T.G.,* 68 S.W.3d at 179 (court has no power to sanction once plenary power expires). Indeed, this Court has specifically drawn the distinction between enforcement orders and sanctions orders, stating:

> The only post-judgment proceedings over which the trial court retains jurisdiction after the expiration of its plenary power are proceedings to clarify or enforce a judgment.

*Jobe,* 874 S.W.2d at 767.[15]

We conclude that the trial court's sanctions orders—*Essenburg* Orders No. 9 and 10—were entered after the expiration of the court's plenary power and are void. We dismiss Howell's appeal of those orders. *See T.G.,* 68 S.W.3d at 177 (appellate court may declare post-plenary-power

---

**13.** We do not read the first motion for sanctions to request a change to the final order, *Essenburg* Order No. 8. If the first motion *did* request a substantive change in the final order, then it would be treated as another motion to modify, and it would have served to extend the court's plenary power. *See generally Lane Bank Equip. Co. v. Smith S. Equip., Inc.,* 10 S.W.3d 308, 310–11 (Tex.2000); *see also* Tex.R. Civ. P. 329b(g). However, when the trial court has failed to rule on a rule 329b motion—including this type of sanctions motion—that motion is overruled as a matter of law on the 75th day after the judgment was signed. *T.G.,* 68 S.W.3d at 177. Thus, the motion for sanctions would have been overruled along with the motion for new trial on January 18, 2000. The trial court's power to change either one of those outcomes lasted for thirty days, until February 17, 2000. This critical date does not change.

**14.** The conduct sanctioned by the trial court in *Essenburg* Order No. 10 was the challenge to *Essenburg* Order No. 9 filed by Reagan and Howell. The validity of Order No. 10, thus, is tied inextricably to the validity of Order No. 9. If Order No. 9 is void because it was signed too late, then the order sanctioning attorneys for complaining of that too-late order is void as well.

**15.** Appellants do not specifically challenge *Essenburg* Order No. 11 (the May 22 order to transfer Sweitzer's files to Kelley) on this ground. However, we note that such an order is related to enforcing the judgment and would therefore fall within the court's continuing jurisdiction according to *Jobe. Id.*

orders void; appeals from void orders must be dismissed).

## Denial of Kenseth's Claims

■ Appellants' fourth issue argues the trial court erred in *Essenburg* by demanding that Kenseth secure letters of administration from the probate court in order to represent the Sweitzer Estate and by striking her claim when she did not do so. Appellants' sixth issue argues the trial court erroneously denied the Sweitzer Estate recovery of its $50,000 share of the contempt penalty in *Sweitzer*. We have discussed Kenseth's standing before this Court and have concluded Kenseth was an appropriate substitute plaintiff for her deceased son and is an appropriate appellant on his behalf as well. For all the same reasons discussed in our jurisdictional analysis, we conclude the trial court did commit error when it rejected Kenseth's claims in both of the trial court proceedings. The court erroneously struck Kenseth's claim in *Essenburg* after she proved she was Sweitzer's sole heir, no administration of his estate was pending, and none was necessary. *See, e.g., Casillas,* 79 S.W.3d at 591. Similarly, the trial court erred when it asserted that no "appropriate claimant" had made a claim for the $50,000 set aside for the Sweitzer Estate in *Sweitzer*. Kenseth was an appropriate claimant on behalf of that estate. We decide appellants' fourth and sixth issues in their favor.

Kenseth has sought to be identified as an appropriate representative of the Sweitzer Estate, and we have identified her as such. With the benefits of that status come certain responsibilities. No party has challenged the trial court's general procedure in *Essenburg* of awarding a portion of each plaintiff-attorney's recovery in

trust for his clients. Because Kenseth is entitled to the award due her deceased son, she is also responsible for overseeing the funds entrusted to the estate for Sweitzer's clients. To carry out that responsibility, she—not Kelley—must have access to Sweitzer's client files. Accordingly, we agree with appellants that the trial court erroneously provided for the transfer of those files to Kelley. We decide appellants' fifth issue in their favor as well.

## Awards to Kelley

Finally, we are left with the issue of the trial court's awards of significant amounts of money in both proceedings to Kelley, the original attorney for the plaintiffs in the two suits. Portions of these awards were cast as fees for Kelley's services; portions can only be understood as a personal recovery. We have already concluded that the trial court was charged with making disbursements that did not conflict with the appellate courts' opinions and mandates in the two cases. We test the trial court's awards to Kelley against that standard.

### Attorney's Fees

■ In their third issue, appellants have challenged both Kelley's right to recover fees and the amount of the fees recovered in *Essenburg*.[16] In the initial proceedings of that case, the trial court awarded Kelley attorney's fees in the amount of $142,957.37, to be paid by the County. This Court deleted that award from the otherwise-affirmed judgment of the trial court. *Essenburg,* 1999 WL 298314, at *4. In that case, Kelley's then-clients conceded they had no statutory basis to recover his fees, but they argued

---

**16.** We consider only appellants' complaints concerning awards of fees in the *Essenburg* case because appeals from Kelley's fee award in *Sweitzer* were untimely.

that they were entitled to recover under the equitable "common fund" doctrine. This Court ruled that such an award would have had to be made from the clients' own recovery, not from the County. *Id.* at *2. Our mandate stated in relevant part:

In accordance with this Court's opinion of this date, the judgment of the trial court is MODIFIED as follows:

It is ORDERED that the award of $142,957.37 in attorney's fees to Timothy E. Kelley is deleted.

Nevertheless, the trial court announced its decision to award fees to Kelley payable by the Sweitzer Estate in *Essenburg* Order No. 7 and made the actual award in *Essenburg* Order No. 8. The new fee awards were in fact made from Kelley's former clients' recovery this time. However, neither this Court's opinion nor its mandate suggested that such an award could be made after the fact. The mandate of this Court deleted the award of Kelley's fees, and that judgment of this Court is final. It is final not only as to issues actually litigated, but also as to issues that could have been litigated. *See Martin v. Credit Prot. Ass'n, Inc.,* 824 S.W.2d 254, 257 (Tex.App.-Dallas 1992, writ dism'd w.o.j.) (affirming trial court's refusal to award attorney's fees not included in appellate court's mandate). It is well-settled that "[a] party cannot try his action in pieces." *Id.* (quoting *Corcanges v. Childress,* 280 S.W. 892, 894 (Tex.Civ. App.-Fort Worth 1926, no writ)). The award of fees to Kelley cannot be justified under this Court's mandate. *See Martin,* 824 S.W.2d at 257; *see also Lake v. Lake,* 899 S.W.2d 737, 741 (Tex.App.-Dallas 1995, no writ) (where appellate judgment did not direct trial court to address attorney's fees, trial court was correct to deny them).

Kelley, however, argues that he successfully intervened in the lawsuit, after the award was deleted, and hence is entitled to the fees as an intervening party in his former clients' lawsuit. Kelley avers he accomplished this intervention by filing his Motion to Recover Fees on the day he was discharged. We disagree. Although it is true that a discharged attorney may sometimes intervene in his former client's lawsuit in order to collect his fees, such an intervention—at the threshold—must comply with the rules of civil procedure. Those rules require a party to file "a pleading" to accomplish intervention; that pleading is then subject to being stricken for sufficient cause on motion of any party. *See* Tex.R. Civ. P. 60. "Motions are not the functional equivalents of pleadings; insufficient similarities exist between a motion and a pleading to allow them to carry the same legal significance." *In re City of San Benito,* 63 S.W.3d 19, 25 (Tex.App.-Corpus Christi 2001) (refusing to find intervention purportedly based upon motion to opt-out objections to settlement in class action), *rev'd in part on other grounds,* 109 S.W.3d 750 (2003). Even disregarding the title of the document and looking only to its substance, we conclude this motion would not put Kelley's former clients on notice that he was seeking to become a party to the lawsuit even for a limited purpose. Indeed, we do not find anything in the record that indicates Kelley himself contemplated an intervention of any sort. Kelley argues appellants cannot complain of the intervention because they did not move to strike it in the trial court. We will not require a party to oppose an "intervention" that fails to implicate any indicia of an intervention under the rules. We conclude Kelley was not entitled to recover attorney's fees from his former clients on an intervention theory.

We find no basis in law to support the trial court's award of attorney's fees to Kelley in the *Essenburg* case. Accordingly, we vacate the award of $21,033.23 made

to Kelley and charged to the Sweitzer Estate in *Essenburg* Order No. 8.[17]

### *Kelley's Recovery as a Party*

When the trial court erroneously determined that Kenseth was not an appropriate representative of the Sweitzer Estate, it awarded Kelley—without explanation—the sums of $25,239.88 (in *Essenburg* Order No. 8) and $50,000.00 (in *Sweitzer* Order No. 3), which had been set aside as the recovery for the Sweitzer Estate in the two cases. But the appellate courts' opinions and mandates made no provision for a recovery of damages (in *Essenburg* ) or of the contempt penalty (in *Sweitzer* ) by Kelley. Instead, in *Essenburg,* this Court reformed the trial court's judgment only by deleting the award of attorney's fees; it otherwise affirmed the judgment of the trial court. That judgment awarded damages to plaintiffs Essenburg, Mallios, Stone, Sweitzer, and Kowalski by name; our mandate awards appellate costs to Essenburg, Mallios, Stone, Sweitzer, and Kowalski by name. Likewise, in *Sweitzer,* the supreme court identified Sweitzer and Kowalski as the real parties in interest, i.e., those who would benefit from the imposition of the contempt penalties against the County. *In re Long,* 984 S.W.2d at 624.

We conclude the appellate courts' directives were clear in both cases: the trial court was to disburse the funds in its registry to those named plaintiffs. Where that disbursement was impossible because of the death of an individual plaintiff, the trial court was implicitly ordered to make the disbursement to the appropriate representative of that deceased plaintiff. And in fact, the trial court did determine, in both cases, an award that would have been appropriate for the Sweitzer Estate. But

even if the trial court had been correct when it rejected Kenseth as the representative of the Sweitzer Estate, nothing in the appellate court's decisions allowed the trial court to transfer the estate's recovery to Kelley. By doing so, the trial court effectively amended the jury's verdict in *Essenburg* and nullified the supreme court's conditional writ of mandamus in *Sweitzer.* We cannot uphold such arbitrary actions by a trial court.

Accordingly, we reverse *Sweitzer* Order No. 3 in its entirety, and we vacate the award to Kelley of $25,239.88 in *Essenburg* Order No. 8.

### FRIVOLOUS APPEAL

Kelley requests that we sanction appellants for taking a frivolous appeal. Appellants have prevailed on a number of significant issues. The appeal was not frivolous, and we deny Kelley's request for sanctions.

### PENDING MOTIONS

The parties filed a number of motions during the pendency of this appeal, and the Court delayed ruling on some motions pending submission of the case and consideration of the merits by this panel. We have addressed the substance of these motions, to the extent necessary and appropriate to resolve this appeal. Accordingly, all motions pending on the date this opinion issues and not resolved in this appeal are denied as moot.

### CONCLUSION

We dismiss the following appeals for lack of appellate jurisdiction:

all appeals from *Sweitzer* Orders No. 1 and 2;

---

**17.** Because no representative of the Stone Estate is before us, we do not address the fee award of $29,872.00 charged to the Stone Estate.

all appeals from *Essenburg* Orders No. 1, 2, 3, 5, and 6;

Kowalski's appeal from *Sweitzer* Order No. 3;

Howell's appeals from *Essenburg* Orders No. 7 and 8; and

all appeals by Beezley.

We declare *Essenburg* Orders No. 9 and 10 void for lack of trial court jurisdiction, and we dismiss all appeals from those two orders. Because we have declared the sanctions orders void, we dismiss as moot Howell's appeal from the findings of misconduct in *Essenburg* Order No. 4.

We reverse *Sweitzer* Order No. 3 and *Essenburg* Order No. 11 in their entirety.

We vacate: (1) the awards of $25,239.88 and $21,033.23 made to Kelley and charged to the Sweitzer Estate in *Essenburg* Order No. 8; (2) all findings of fact and conclusions of law related to Sweitzer, the Estate of Sweitzer, and Kenseth in *Essenburg* Order No. 8, including those findings and conclusions rooted in *Essenburg* Order No. 4; (3) all orders, directives, and decrees in *Essenburg* Order No. 8 related to administration or management of the Sweitzer Trust by Kelley; and (4) all findings of fact and conclusions of law related to Sweitzer, the Estate of Sweitzer, and Kenseth in *Essenburg* Orders No. 4 and 7.

We remand this cause to the trial court for proceedings not inconsistent with this opinion.