### CORCANGES et al. v. CHILDRESS.
### (No. 11370.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 23, 1926.)

**1. Appeal and error ⚙══1195(1).**

Decision on appeal, unless clearly erroneous, is ordinarily binding on a subsequent trial on same state of facts.

**2. Judgment ⚙══445.**

Judgment on notes is conclusive and precludes defendant from restraining enforcement of judgment on claim of payment prior to judgment not interposed as defense.

**3. Judgment ⚙══889.**

Agreement of judgment creditor with judgment debtor to cancel judgment is unenforceable if not supported by consideration.

**4. Judgment ⚙══889—Actual forbearance by judgment debtor to prosecute unenforceable claim against judgment creditor is not consideration for latter's agreement to satisfy judgment.**

The actual forbearance by a judgment debtor to prosecute against judgment creditor a claim clearly unenforceable against the judgment creditor does not constitute consideration for the latter's agreement to satisfy the judgment.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Suit for injunction by J. W. Childress against George P. Corcanges and another. There was a judgment granting the relief prayed for, and defendants appeal. Reversed, and injunction canceled and set aside.

See, also, 264 S. W. 175.

Preston Martin, and Geo. A. McCall, both of Weatherford, for appellants.

J. M. Richards, of Weatherford, for appellee.

CONNER, C. J. This suit was instituted by the appellee, J. W. Childress, in the district court of Parker county, Tex., for an in-

junction against the appellant George P. Corcanges and the sheriff of Parker county to prevent the collection of a judgment obtained by the appellant Corcanges against J. W. Childress on the 10th day of May, 1918, for the sum of $273.35, with interest at 10 per cent. from that date. In so far as necessary to state, the undisputed facts show that on said 10th day of May, 1918, the appellant Corcanges in the district court of Parker county obtained the judgment referred to on two vendor's lien notes executed by J. W. Childress, payable to Corcanges, executed in December, 1915, in part payment of property purchased by Childress from Corcanges. In that suit J. W. Childress appeared and answered, and, among other things, pleaded to the effect that the two vendor's lien notes had been secured by means of fraud and misrepresentation made to him by Corcanges when he (Corcanges) sold the property to Childress for which the two vendor's lien notes had been executed. No other defense to the notes was presented. Childress' plea of fraud and misrepresentation was not sustained, and Corcanges secured judgment in the said sum of $273.35, and it is undisputed that said judgment is final.

Appellee's petition for injunction under consideration exhibits the facts above stated and, among other things, avers that the execution he desires to restrain was not levied until the 12th day of March, 1923; that at the date of said judgment and said levy appellee was in possession of property subject to execution, but that none had been issued; and that hence the judgment was dormant. Appellee further specially pleaded that—

"After the rendition of the judgment of May 10, 1918, in favor of defendant herein (Geo. P. Corcanges) against plaintiff for the sum of $273.35 that plaintiff paid, settled and fully discharged said debt, but that said Geo. P. Corcanges, the owner thereof, has failed and now refuses to release or have entry of payment and satisfaction entered on the records of the said district court of said county, but is now, as hereinbefore stated, seeking to sell plaintiff's said real estate, that defendant may receive payment twice for one and the same debt."

The prayer was for the issuance of a temporary injunction restraining the appellant Corcanges from further offering for sale the land that had been levied upon and for a perpetual injunction and cancellation of the judgment. The temporary writ was granted. The court, on final hearing, after overruling appellant's exceptions and demurrers, denied a motion to dissolve the writ, and rendered judgment in favor of appellee, granting the relief prayed for by him, and restrained the appellant Corcanges and the sheriff of Parker county from further attempting to enforce the alias execution that had been levied upon the real property described in plaintiff's petition, and further decreed that no other effort should be made to enforce the collection of said judgment rendered in favor of Corcanges on the 10th day of May, 1918. From the decree so entered, Corcanges has duly prosecuted this appeal.

It is apparent, we think, from the trial court's conclusions of fact and law, that his judgment is based upon the theory that the appellee Childress was in equity entitled to an offset against the Corcanges judgment in an amount sufficient to discharge the same, and that an agreement on the part of Corcanges, to which Childress testified, to cancel and discharge the judgment in settlement of the offset, should be enforced. The undisputed facts relating to the defense suggested in the theory imputed to the trial court are substantially as follows: The notes constituting the foundation of appellant's judgment on May 10, 1918, were executed in December, 1915. The appellee Childress testified to the effect that prior to the judgment of May 10, 1918, Corcanges was endeavoring to effect an exchange of property with one Ward and employed him (Childress) to assist in making the exchange which was made. Relating to this, we quote the following from the statement of facts:

"Q. Did you make the Albert Ward deal in which to receive commission from Mr. Corcanges? A. I made the deal this way: That Mr. Corcanges was about to be sued by Mrs. Short, I believe, on that property, and George wanted to get shut of that suit, and George said to me, 'If you will carry the deal with Albert Ward, whereby I will get the money to pay that off, I will give you what your indebtedness amounts to.' If it didn't amount to 200 or 100, whatever it was; whatever those notes are. Those notes were then in existence."

On a preceding effort by appellee to enjoin the judgment under consideration, it was held by the Court of Civil Appeals at San Antonio, on an appeal by appellant from an order of the district court perpetuating an injunction theretofore issued, that the claim, offset, or accord and satisfaction, presented in the foregoing evidence of appellee which we have quoted, was merged in the judgment of May 10, 1918, and hence would not support an injunction against the judgment. See Corcanges v. Childress, 264 S. W. 175. This judgment of the San Antonio court has in no wise been disturbed, and appellant on the trial below pleaded the decision as conclusive of the issue in this proceeding. That court in finally disposing of the case had this, among other things, to say:

"If it is true, as appellant contends, that appellee agreed in 1916 to cancel the notes he held against appellant, and that the latter's debt to the former was by said agreement satisfied and discharged, then this fact constituted a complete defense to an action to enforce the payment of those notes, and when appellee filed his action thereon in 1918 it was appellant's privilege and duty to set up that defense in that suit. He did not do so, however, but sought

therein to defeat the payment of the notes on the sole ground that they were obtained from him by appellee's fraud. Having thus neglected to set up this defense in a suit at law, in which it was available to him, appellee could not afterwards apply to a court of equity for an injunction, and in such proceeding assert that defense. Freeman, Judg. (4th Ed.) §§ 272, 435, 501, 502, 506; 17 Cyc. 1183; Crawford v. Wingfield, 25 Tex. 414; Thompson v. Lester, 14 S. W. 20, 75 Tex. 521; Gathings v. Robertson (No. 7165) 264 S. W. 173, decided by this court on May 22, 1924.

"The rule is tersely stated in section 272, Freeman: 'A judgment of a court possessing competent jurisdiction is final, not only in reference to the matters actually or formally litigated, but as to all other matters which the parties might have litigated and had decided in the cause. A party cannot try his action in parts. The judgment is conclusive, not only of the matters contested, but as to every other thing within the knowledge of the complainant which might have been set up as a ground for relief in the first suit.'

"For this reason, as well as because the matter relied on by appellant was clearly barred by limitation, the court below erred in rendering judgment for appellee."

We think the conclusions so announced undoubtedly correct, indeed, it is not seriously contended otherwise, but the contention is that the agreement relied upon by the appellee in the present case is not the agreement made with appellant prior to the rendition of the judgment in May, 1918, but one made soon after the rendition of that judgment, to the effect that he (Corcanges) would cancel and mark "satisfied" the said judgment. A reading of the opinion in 264 S. W. 175 will disclose, however, that in that proceeding, as well as in this, the appellee, among other things, pleaded the agreement last referred to. This is shown by the following quotation from the opinion:

"As ground for restraining the sale under execution, Childress alleged that the judgment had become dormant at the time the execution was issued thereon, and, further, that 'after the rendition of the judgment * * * plaintiff paid, settled, and fully discharged said debt,' but that defendant Corcanges had failed and refused 'to release or have entry of payment and satisfaction entered on the records of' the court in which the judgment was rendered. It appears to be conceded that the evidence disclosed that the judgment had not become dormant, as alleged, and this leaves in the case the one question of whether or not the judgment had been satisfied."

[1] The court first affirmed the judgment of the trial court in favor of Childress on the above theory, to wit, on the theory evidently adopted by the trial court in this case that the agreement to offset the judgment was made after its rendition and not before, but having later discovered from a review of the facts that the agreement was made before the rendition of the judgment of 1918, no right to the injunction existed, and the judgment was reversed, as before indicated. Counsel in behalf of appellant states in his brief and in argument on submission that the pleadings and evidence in the former proceeding was substantially the same as in the present one, and insists that the decision of the San Antonio court is the law of the case. It is well settled in this state that the decision of an appellate tribunal on appeal, unless clearly erroneous, is ordinarily binding on a subsequent trial upon the same state of facts. Kempner v. Huddleson, 37 S. W. 1066, 90 Tex. 182; Green v. Priddy, 112 Tex. 567, 250 S. W. 656.

[2,3] We think the able trial court in this case must have misinterpreted the decision on the former appeal. He must have concluded that the agreement after the rendition of the judgment in 1918 had not been pleaded nor proven in the case of the former appeal, and that the final judgment or reversal was predicated alone upon the fact that the evidence showed that the agreement had been made prior to the judgment of 1918, and it would seem upon a reading of the opinion that it is perhaps open to that construction; but we think the court must evidently, from the quotation we have made from that opinion, had in mind, in reversing the case and in holding that no cause for injunction had been shown, not only the evidence showing the agreement made prior to the judgment, but also the agreement made subsequently thereto. At least, we shall so interpret it. It is undisputed that the service alleged to have been performed by appellee, for which he claimed commissions in amount equal to his two promissory notes, made the foundation of the judgment in 1918, was performed some time prior to the rendition of the judgment, and without doubt, under the authorities, it was his duty to have presented that defense in that trial, and not having done so, he is undoubtedly concluded, under authorities before cited. We think it can make no difference in principal that he later, after the rendition of the judgment, had an agreement to have the judgment canceled, if indeed he had one, but which was explicitly denied by appellant in his testimony.

Appellee's debt, if it ever existed, at all times remained the same. The notes were but written evidences of that debt, and the judgment of 1918 only changed its form, and we fail to see any sufficient consideration to support the later agreement. It is not contended that any additional services had been performed on appellee's part, or that he was entitled to any commission or compensation other than for the services performed in affecting the exchange with Ward, which occurred long prior to the 1918 judgment. On the trial below appellee alleged and testified, which testimony was also denied by appellant, that—

"I spoke to Mr. Corcanges about this matter. I says, 'George, you know we have got to wipe out my debt for that service I rendered you in the Albert Ward trade, and if you don't pay it I am going to bring suit to satisfy it, to have it settled.' George said to me: 'Why not bring suit; it will cost money, and when I settle with McCleskey, and that is all settled, I will have that judgment marked, "Satisfied in full."'

"Q. Did you tell him you had employed Hood and Shadle? A. Yes, Shadle. He said it would cost money for the suit and when he settled the business off he would have my judgment marked, 'Satisfied.' He acknowledged at that time he owed me money for services in the Ward case. He never at any time denied that."

[4] Appellee further testified that he forbore to institute the suit on his claim for commissions, and had the agreement last referred to been the only one, the forbearance shown might have constituted a sufficient consideration for appellant's agreement to offset his judgment; but, as we have seen the agreement to cancel the judgment, while differing in form, was in effect and substance the same as the agreement to cancel the notes prior to the rendition of the judgment upon them, and we think that had appellee instituted his suit, as he testified he intended doing, to recover his commissions, after the rendition of the judgment he could not have successfully recovered, for the reason that he was precluded by his failure to set up that defense in the trial of the case in 1918.

In 9 Cyc. pp. 338–341, it is said:

"Refraining from bringing a suit may furnish a consideration. The actual forbearance or the promise to forbear to prosecute a claim upon which one has a right to sue is universally held to be a sufficient consideration. * * * To insist on a claim clearly unenforceable cannot be a consideration."

See, also, Von Brandenstein v. Ebensberger, 9 S. W. 153, 71 Tex. 267, in which case it appears that Ebensberger had instituted suit in the justice court against the estate of Walz, deceased, of which Brandenstein was administrator. The suit was upon an open account for $202. A writ of attachment was sued out and levied upon the furniture and household goods belonging to the Walz estate. Walz left a widow surviving him, who was sister-in-law to Brandenstein. At the time the goods and furniture were seized under the attachment, they were stored in a vacant house in the town of Boerne. In consideration that Ebensberger would forbear to further prosecute his suit, and release the furniture and goods from the custody of the officer under the writ of attachment, the administrator executed and delivered to Ebensberger the following instrument:

"I, the undersigned, notify hereby that I will pay on or before the first day (1st) of July, 1886, the bill of Dr. Arnold Walz, deceased ($202), by cash to Mr. C. O. Ebensberger.
"Leo Von Brandenstein."

The goods and furniture were released and delivered to Brandenstein, and the suit in the justice's court was discontinued by Ebensberger. Brandenstein having failed to pay the sum stated in the instrument quoted, suit was brought thereon. The court in disposing of the question said:

"There can be no doubt that an agreement to forbear to prosecute a suit to enforce a well-founded claim in law or equity is a sufficient consideration to support the promissory note of the debtor, or a third person, where the creditor has, in pursuance of such agreement, actually forborne. (Parsons on Contracts, 462 et seq.; 1 Chitty on Contracts, 35 et seq.) But, in order to give such agreement the effect stated, it must be made in respect of a well-founded claim, and there must also be some person liable to suit therefor."

The court further said that it was evident from the allegations of the petition in that case that the attachment sued out was levied upon property that was exempt under the laws of this state, and that no other fact or circumstance had been alleged that would relieve the property from the protection of the exemption laws, and that Ebensberger "had no such claim, or suit pending, as his forbearance to prosecute would constitute sufficient consideration to support the note sued on."

Appellant urges other propositions of force, but we think what we have said sufficiently disposes of the case, and we accordingly conclude that the judgment should be reversed and the injunction canceled and set aside, and that all costs be adjudged against appellee.