KELLY v. WILSON et al.   (No. 3215.)

(Court of Civil Appeals of Texas. Texarkana.
May 21, 1926. On Motion for Rehearing, June 24, 1926.)

1. **Limitation of actions** ☞96(2)—**Defendants' right to have partition deed reformed for mistake held barred by limitations, where they were served with notice of plaintiff's suit to recover the land in October, 1914, and did not seek correction of deed until November 15, 1924.**

Defendants' right to have partition deed reformed for mistake of person who wrote it, in that land described therein was set apart to plaintiff instead of to defendants, *held* barred by limitations, where they were served with notice of plaintiff's suit to recover the land in October, 1914, and they did not seek a correction of deed until November 15, 1924.

2. **Adverse possession** ☞117—**Finding of trial court that defendants had actual and constructive possession of land in controversy involved finding that they cultivated and used the land, and that their possession was "peaceable and adverse" within statute (Vernon's Sayles' Ann. Civ. St. 1914, art. 5675).**

In suit to recover possession of land, finding of trial court for defendants that defendants had actual possession of part of the land, and that they had constructive possession of the rest of it, involved a finding that defendants cultivated or otherwise used the land while they had possession thereof, and that their possession was peaceable and adverse within Vernon's Sayles' Ann. Civ. St. 1914, art. 5675.

3. **Adverse possession** ☞98—**Where owner of tract containing more than 160 acres has actual possession of part thereof, adverse possession of claimant under 10-years statute of limitations does not extend beyond part he is actually occupying, if less than 160 acres (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5675, 5676).**

Where owner of tract containing more than 160 acres has actual possession of part of the land, adverse possession of a claimant thereof under 10-year statute of limitations of Vernon's Sayles' Ann. Civ. St. 1914, art. 5675, does not extend beyond part he is actually occupying, if less than 160 acres, notwithstanding article 5676.

4. **Adverse possession** ☞107—**Defendants who acquired title to 160 acres of land by limitations, before plaintiff's tenant fenced part of it, held entitled to claim entire tract, in absence of showing that plaintiff reacquired title to tract thereafter (Vernon's Sayles' Ann. Civ. St. 1914, art. 5675).**

Defendants who acquired title to 160 acres of land in controversy by virtue of statute of limitations of 10 years of Vernon's Sayles' Ann. Civ. St. 1914, art. 5675, before plaintiff's tenant fenced part of tract, *held* entitled to claim entire 160 acres, in absence of evidence that plaintiff in some lawful way reacquired title thereto after such time.

On Motion for Rehearing.

5. **Adverse possession** ☞46.

Failure to keep up a fence is not necessarily an interruption of adverse possession.

Error from District Court, Walker County; Earl T. Harper, Judge.

Suit by S. H. Kelly against Ella L. Wilson and others. Judgment for defendants, and plaintiff brings error. Affirmed.

By a deed dated October 3, 1850, and one dated April 13, 1853, John Montgomery undertook to convey 1,400 acres of his headright survey in Madison county to Samuel Calhoun. The 1,400 acres was in two tracts; one of which was supposed to contain 1,000 acres, and the other 400 acres. The 1,000-acre tract was 1,538 varas wide, and fronted east on Bedias creek. The 400-acre tract was of the same width, and its east boundary line was the west boundary line of the 1,000-acre tract. At the time of his death in September, 1870, said Calhoun claimed to own the 1,400 acres, but it was determined by a judgment rendered December 7, 1871, in a suit between his executor and the heirs of said Montgomery, that he (Calhoun) owned only 817 acres thereof, and that the 583 acres remaining belonged to said Montgomery heirs. After said judgment was rendered, but at what particular time is not shown in the record, the county surveyor and commissioners, appointed by the court for the purpose, divided the 1,400 acres into two parts, one containing 817 acres, it was supposed, and the other 583 acres, and made and established a division line between the parts in accordance with said judgment. The 817-acre tract was allotted to Calhoun's devisees. It fronted east on said Bedias creek and was all of the 1,000-acre tract except 183 acres on the west end thereof, which, with the 400-acre tract, was allotted to the Montgomery heirs. At the time he died said Calhoun owned other tracts of land besides the one above referred to. In September, 1888, his devisees executed an instrument, in which it was recited that they had—

"by verbal agreement among themselves partitioned and divided the said lands among themselves, and designated the respective portions of the said lands that each of them should thereafter possess and own; and, whereas, said legatees or the heirs of each of them have had exclusive possession and control of the respective shares so set apart to them ever since partition was so made as aforesaid; and, whereas, by said partition there was set apart * * * to Mary C. Smith (now Mrs. Kate Kelly) as her share and part of the lands of said decedent under the provisions of said will the following tracts or parcels of land:

"Tract No. 14: 200 acres in Madison county, in said state, being part of the John Montgomery headright in said county, and on the north line thereof, being that part of said Montgomery survey set apart to Samuel Calhoun in the partition between the heirs of John Montgomery and the heirs of Samuel Calhoun, and including all that part of said headright, set apart to said heirs, except 617 acres herein set apart to Mrs. Ella Wilson, and designated as Tract No. 18.

"And, whereas, by said partition there was

set apart to the said Ella C. Calhoun, now Mrs. Ella Wilson, as her share and part of the lands of said decedent under the provisions of said will, the following tracts or parcels of land:

"No. 18: 617 acres in Madison county, in the state of Texas, being a part of the John Montgomery headright in said county, including the eastern part of the land owned by the said S. Calhoun in said headright survey, except a 10-acre survey set apart to Louis Calhoun by the will of said decedent."

Following the recitals just set out, and one that "all the parties in interest are desirous of carrying out said verbal partition, and of giving full force and effect thereto according to its several terms and provisions," it was declared in the instrument that each of the parties "granted and conveyed" to the other, and all to each, the land therein set apart to him or her, "to have and to hold," etc.

This suit was by plaintiff in error, Kelly, as plaintiff against defendant in error Ella Wilson and her husband defendant in error J. R. Wilson. It was commenced by a petition filed October 8, 1914, in which plaintiff in error alleged that said Ella Wilson owned 617 acres, less 10 acres owned by Louis Calhoun, "off of and including the eastern part" of the tract hereinafter referred to as 817 acres allotted to devisees of Samuel Calhoun in the partition between them and the heirs of John Montgomery, and that he (plaintiff in error) owned the remainder of said 817-acre tract. After alleging, further, that defendants in error entered upon and ejected him from the land he owned, as alleged, plaintiff in error prayed judgment therefor, and that the boundary line between that land and the 617 acres owned by Mrs. Wilson be "fixed and established." The answer of defendants in error to said petition was a plea of not guilty, and pleas setting up the three, five, and ten year statutes of limitations. The trial on the pleadings specified resulted in a judgment in favor of defendants in error. Plaintiff in error having prosecuted an appeal to the Court of Civil Appeals at Galveston, that court, in conformity to its opinion reported in 233 S. W. 141, reversed the judgment, "with instructions to the trial court to render judgment for the plaintiff for all the land in controversy, except such portion or portions thereof as defendants may show title to under their plea of limitation."

The trial resulting in the judgment from which this appeal was prosecuted was had on an amended petition filed November 7, 1924, and an amended answer filed November 15, 1924. The only material difference between the petition on which the first trial was had and the one on which the last trial was had was that in the latter plaintiff in error set up title in himself to the land under the five and ten year statute of limitations. The amended answer on which the last trial was had differed from the original answer on which the other trial was had in that in said amended answer defendants in error alleged that in the verbal partition of Samuel Calhoun's estate mentioned in the deed of September, 1888, above referred to, the land in controversy was set apart to defendant in error Ella Wilson, and that other lands belonging to said estate, including 200 acres of the Montgomery survey, situated a short distance west of the land in controversy, were set apart to Mrs. Kate Kelly, whose title plaintiff in error had; that said verbal partition was effected "shortly after" Samuel Calhoun's death, and always thereafter, until about the time this suit was commenced, was acquiesced in by all the parties concerned, and that it was due to a mistake of the person who wrote said deed of September, 1888, that the land in controversy instead of said 200 acres situated a short distance west thereof, as before stated, was mentioned therein as set apart to said Mrs. Kelly. Defendants in error alleged that the effect of such acquiescence was to estop plaintiff in error from asserting a right to the land in controversy. Defendants in error averred further that they did not discover the alleged mistake until the trial of the case the first time, and were entitled to have same corrected. They prayed accordingly. The testimony on the last trial was not materially different from that on the other trial, except that relied upon to show a mistake as charged in the partition deed of September, 1888.

The trial was to the court without a jury. The findings the court made, reduced to writing, and filed with the clerk, as provided in article 1989, Vernon's Sayles' Ann. Civ. St. 1914, warranted the judgment he rendered in defendant in error Ella Wilson's favor for the 617 acres described as tract No. 18 in said partition deed of September, 1888, and for 160 acres of the remainder of the 817 acres of the Montgomery survey set apart to Calhoun's devisees in the partition between them and the Montgomery heirs, and in favor of plaintiff in error for the part remaining of said 817 acres.

Dean & Humphrey, of Huntsville, for plaintiff in error.

W. L. Hill, of Houston, and A. T. McKinney, of Huntsville, for defendants in error.

WILLSON, C. J. (after stating the facts as above). Construing the partition deed of September, 1888, referred to in the statement above, the Galveston Court of Civil Appeals held, when the cause was before it, that the effect of the instrument was to pass the title to the land in controversy to Mrs. Kate Kelly, and that plaintiff in error, owning her title, was entitled to recover all of that land, "except (quoting) such portion or portions thereof as defendants (defendants in error here) may show title to under their plea of limitation." Plaintiff in error insists that said holding of said court was conclusive of the contention of defendants in error, so far as

it was that such was not the effect of said deed.

The rule in the other jurisdictions seems to be as plaintiff in error asserts it to be (4 C. J. 1097, 1099), but the rule in Texas is otherwise, and, it seems, would require the overruling of the contention of plaintiff in error, if it clearly appeared that the holding in question was erroneous. Green v. Priddy, 112 Tex. 567, 250 S. W. 656; Amsler v. Cavitt (Tex. Civ. App.) 271 S. W. 139; Corcanges v. Childress (Tex. Civ. App.) 280 S. W. 892; Bank v. Brown (Tex. Civ. App.) 281 S. W. 300. However, we not only think it does not so appear, but, on the contrary, think it clear that the effect of the deed was as determined by said Court of Civil Appeals.

In that view of the case, in disposing of the appeal it would not be necessary to do more than to refer to the opinion of said court on the former appeal for a statement of the reasons for the holding, and then determine whether the instructions of that court with reference to the claim of defendants in error based on the statute of limitations had been, or must have been, complied with or not, but for the contention of defendants in error, presented for the first time in the amended answer on which the last trial was had, that it was due to a mistake of the person who wrote said partition deed that the land in controversy was described therein as having been set apart to Mrs. Kelly instead of to defendant in error Ella Wilson. On the theory of such a mistake defendants in error pray that the deed be so reformed as to correct same.

[1] It will not be necessary to determine whether such a mistake in the partition deed was shown or not, for, if it was the right of defendants in error to have the deed reformed as prayed for, it was barred by the statute of limitations invoked by plaintiff in error. Defendants in error could not claim ignorance of the mistake after they were served with notice of plaintiff in error's suit in October, 1914, and they did not seek a correction thereof until November 15, 1924, when their second amended answer was filed. Stone v. Sledge (Tex. Civ. App.) 24 S. W. 697; Tarrant Co. v. McLemore (Tex. Sup.) 8 S. W. 94.

[2] It appeared without dispute in the testimony, and the trial court found the fact to be, that defendants in error had actual possession of a part of the land in controversy from 1871 to the date of the trial. That court found, further, that during said time defendants in error had constructive possession of the part of said land they did not have actual possession of. The court did not find that defendants in error cultivated or otherwise used the land while they had possession thereof, nor did he find that their possession was "peaceable and adverse" within the meaning of the statute (article 5675, Vernon's Sayles' Ann. Civ. St. 1914), but such findings were involved in the judgment rendered in favor of defendant in error Ella Wilson for 160 acres of the land in controversy.

Plaintiff in error insists that said defendant in error Ella Wilson was entitled to claim only the part (about 32 acres) of the land she had inclosed and used, and that the judgment was wrong so far as it was in her favor for a greater quantity of the land in controversy.

[3] It seems that, where the owner of a tract containing more than 160 acres had actual possession of a part of the land, the adverse possession of a claimant thereof under the 10-year statute of limitations (article 5675, Vernon's Sayles' Ann. Civ. St. 1914), cannot be construed as extending beyond the part he is actually occupying, if less than 160 acres, notwithstanding the provision in article 5676, Vernon's Sayles' Ann. Civ. St. 1914, that the possession of such a claimant may be construed to embrace as many as 160 acres. Simkins' Title by Limitation, 152, and authorities there cited.

[4] It was held on the former appeal, the record title to all the land in controversy being in plaintiff in error, and it appearing that he had actual possession of a part of it, that his constructive possession extended to all the part remaining which defendants in error did not have actual possession of, and therefore that defendants in error, by force of the statute, were entitled to claim only the part of the land they had inclosed and used. But we have found no testimony in the record before us showing the plaintiff in error or those whose title he has had actual possession of any part of the land prior to 1898 or 1899, when J. A. Herring as Mrs. Kelly's tenant fenced and thereafter used a part of it as a pasture.

Construing (as we think we should in support of his judgment) the finding of the trial court to be that defendants in error before 1898 acquired title to 160 acres of the land by virtue of the statute of limitations of ten years, defendants in error, and not plaintiff in error, were the legal owners of the 160 acres in controversy when Herring fenced part of it in 1898. In that view of the case, we think the correctness of the conclusion of the court on the former appeal depends upon whether it appeared that plaintiff in error in some lawful way reacquired the title to the 160 acres after 1898. It was not claimed that plaintiff in error ever reacquired the title in any other way than by force of the statute of limitations of ten years, and it is not contended on this writ of error that it appeared from the testimony that plaintiff in error reacquired it in that way. Therefore, we do not think it ought to be held that the judgment in defendant in error Ella Wilson's favor for the 160 acres was unauthorized.

Assignments and cross-assignments not disposed of by what has been said are overruled, and the judgment will be affirmed.

On Motion of Plaintiff in Error for a Rehearing.

[5] Plaintiff in error insists the testimony did not warrant a finding that defendants in error had and held continuous possession of any of the land in controversy for a sufficient length of time after the partition deed of 1888 was executed, and before J. A. Herring, as Mrs. Kelly's tenant, fenced part of it, to perfect title in them by force of the 10-year statute of limitations. In support of the contention, attention is called to the fact that while said deed was dated "September ——, 1888," its execution was not acknowledged by some of the parties to it until February 26, 1889, whereas, as stated in the opinion disposing of the appeal, there was testimony that Herring, as Mrs. Kelly's tenant, fenced a part of the land in 1898 or 1899. Considering the testimony referred to alone, there would be reason for the contention, but, looking to the statement of facts again, we find that Herring himself testified that he leased the land from Mrs. Kelly and fenced it in "the early part of 1900." As the time intervening between February, 1889, and the early part of 1900 was more than 10 years, we cannot say there was no support for the trial court's finding. There was testimony that defendants in error, claiming to own all the land in controversy, were in possession of a part thereof from 1871, and that their possession was continuous, unless it should be held to have been broken by the fact that fences inclosing same were washed away when the land was overflowed by water in 1890 and were not rebuilt at once. It is held, according to Simkins on Title by Limitation in Texas, that "not keeping up a fence is not necessarily an interruption of adverse possession," and the statement is warranted by the authorities cited by the author of the work.

The motion is overruled.