

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00073-CV
_____


THE ESTATE OF LEAH RITA TILLOTSON, DECEASED


On Appeal from the County Court at Law No. 2
Hunt County, Texas
Trial Court No. 18359


Before Morriss, C.J., Stevens and Carter,* JJ.
Opinion by Justice Stevens

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

# OPINION

Thomas Tillotson raises complaints about the trial court's rulings related to the administration of his wife's estate. In this appeal, we find that most of Thomas's complaints either relate to matters that have already been decided by the Dallas Court of Appeals (the Dallas Court) in two prior cases, which have become the law of the case, or to final judgments and orders that were never timely appealed. To attack the final judgments and orders, Thomas filed a bill of review, but we determine that the trial court did not abuse its discretion in denying it. Thomas also raises unpreserved complaints for the first time on appeal. We overrule all of Thomas's appellate points and affirm the trial court's order denying his bill of review and order requiring him to turn over certain assets pursuant to a mandate issued by the Dallas Court.

## I. Factual and Procedural Background

Thomas and Leah Rita Tillotson were married for thirty-seven years. On August 31, 2017, Leah died intestate, and her daughter from a previous marriage, Kristi Sherrill Hoyl, was appointed administratrix of Leah's estate. Thomas objected to Hoyl's initial and amended inventory, appraisement, and list of claims. Thomas's objections were the subject of an appeal filed in the Dallas Court, which described his complaints in the following manner:

> Thomas objected that Hoyl had included among the estate's community property inventory Thomas's Rollover IRA, Roth IRA, and U.S. savings bonds. He argued that any community property interest the estate had in these items was preempted by federal law that established the investments and rendered them his separate property. Thomas also objected to two items listed among the claims owed to the estate: reimbursement to the estate of $25,000 in Leah's separate property used as down payment to purchase the couple's home in 1984; and community funds allegedly used to pay mortgage, taxes, and insurance on Thomas's separate real property. According to Thomas, the $25,000 down payment came from

2

community funds, and the estate actually benefited from rent on his separate real property. The trial court heard and overruled Thomas's objections.

*Estate of Tillotson*, No. 05-19-01192-CV, 2020 WL 7767937, at \*1 (Tex. App.—Dallas Dec. 30, 2020, no pet.) (mem. op.).

In that appeal, which was the first of two before the Dallas Court, Thomas argued that the trial court erred (1) "in approving Hoyl's inventory and appraisement to include his Rollover IRA and Roth IRA among the estate's community property interests," *id.* at \*2, (2) "in approving Hoyl's claim for reimbursement of community property expended on Thomas's separate real property," *id.* at \*8, (3) "in approving Hoyl's community property inventory to include U.S. savings bonds issued solely in his name," *id.* at \*3, and (4) "in approving Hoyl's claim for reimbursement of Leah's separate property used for a down payment on the family home in 1984," *id.* at \*6.

The Dallas Court determined that the trial court did not abuse its discretion "in approving Hoyl's inventory as to the Rollover and Roth IRAs," *id.* at \*3, or "in approving Hoyl's claim for reimbursement of community property expended on Thomas's separate real property," *id.* at \*8. Even so, the Dallas Court found that "the trial court abused its discretion in approving Hoyl's inventory to include Thomas's U.S. savings bonds among the estate's share of community property and in approving Hoyl's claim for reimbursement of $25,000 of Leah's separate property used for a down payment on the River Oaks House" (River Oaks). *Id.* at \*9. As a result, the Dallas Court reversed the trial court's order with respect to the U.S. savings bond and the $25,000.00 reimbursement claim, affirmed the remaining portions of the trial court's order, and remanded the matter to the trial court for further proceedings consistent with its opinion. *Id.*

3

Hoyl filed a second amended inventory, appraisement, and list of claims (Inventory 2), which was approved by the trial court in an order entered on October 5, 2019 (Inventory 2 Approval Order). On November 13, 2019, the trial court entered judgment of $16,666.67 against Thomas in favor of Leah's estate for reimbursement and granted Hoyl's claim for an equitable lien in that amount in favor of the estate against River Oaks. After Hoyl had filed an application for turnover of property, Thomas agreed to an order of partial distribution of property, leaving only certain property in dispute. On December 20, 2019, the trial court also entered a separate judgment against Thomas after finding that Leah's estate was entitled to reimbursement of $28,209.00 "for investment in the separate property of Thomas Tillotson" and imposed an equitable lien on that separate property, called the "Bonnie View" property. These 2019 Judgments[1] were not appealed.

Hoyl next filed an application for partition of four items that she contended constituted community property: (1) a "Fidelity, individual stock account ending in 5749," (2) a "Fidelity Rollover, IRA ending in 0935," (3) a "Fidelity Roth IRA, ending in 8220," and (4) "255 US savings bonds, series EE in various denominations," and prayed for the trial court to issue a turnover order. After a non-evidentiary hearing, the trial court granted Hoyl's requested relief in an order for "Turnover Partition and Distribution of Estate" (Turnover Order) and ordered sums representing Leah's estate's interest in each of the four items to be turned over to Hoyl. Thereafter, Thomas pursued three avenues in an effort to overturn the trial court's Turnover

---

[1]We refer to the trial court's November 13 and December 20 judgments collectively as the "2019 Judgments."

Order: filing a new petition, filing a bill of review, and filing an appeal with the Dallas Court. We discuss each in turn.

On October 30, 2020, Thomas filed an original petition for declaratory judgment requesting the trial court to declare (1) that Inventory 2 did not establish title to property, (2) that the four assets listed in the Turnover Order were non-probate assets owned by him, (3) that the 2019 Judgments that were not appealed were void, (4) that River Oaks was his homestead, and (5) that the Bonnie View property was his separate property.[2] He also filed a bill of review on the same date requesting the trial court to "find substantial error and set aside as null and void all orders or judgments that were based upon the fallacy that an Estate inventory establishes title, including," the 2019 Judgments, the Turnover Order, and "all other orders or judgments relying on [Inventory 2] as conclusive proof of title."

Next, Thomas appealed the Turnover Order to the Dallas Court, arguing that it "erroneously order[ed] Thomas to turn over to Hoyl sums representing Leah's one-half community property interest in Thomas's Rollover IRA, Roth IRA, U.S. savings bonds, and a Fidelity individual stock account."[3] *Estate of Tillotson*, No. 05-20-00258-CV, 2021 WL 1034842, at *1 (Tex. App.—Dallas Mar. 18, 2021, no pet.) (mem. op.). In that second appeal, Thomas argued the following:

---

[2]The petition requesting declaratory relief was amended in April 2021 but was later nonsuited.

[3]Arguing that the Dallas Court, which had not yet ruled on Thomas's complaints, had jurisdiction to decide Thomas's issues, Hoyl moved to dismiss Thomas's petition for declaratory judgment and the bill of review. Hoyl also argued that the 2019 Judgments were not appealed and that the trial court's general continuing jurisdiction of probate matters did not alter its plenary power over the final judgment.

5

> (1) as surviving spouse, only he alone may apply for a partition of the community property, which he did not do; (2) as surviving spouse, he is entitled to retain possession and control of all community property that was legally under his management during the marriage; (3) all of the property he was ordered to turn over was his sole management community property; and (4) even assuming Hoyl had the right to apply for partition of Thomas's sole management community property, the Turnover Order does not comply with the Estates Code because it fails to address Thomas's right to statutory deductions.

*Id.* With respect to the U.S. savings bond, the Dallas Court relied on its earlier opinion to conclude that the trial court "abused its discretion in approving Hoyl's inventory to include Thomas's U.S. savings bonds among the estate's share of community property." *Id.* at *3. It then focused its analysis on Thomas's arguments relating to his Rollover IRA, Roth IRA, and Fidelity individual stock account. *Id.*

The Dallas Court found that "Hoyl in her capacity as administratrix could request partition of the community property[, . . .] that the trial court did not err by granting Hoyl's request to partition community property," and that "Thomas d[id] not specify what debts or losses or expenses or commission was not properly deducted." *Id.* at *3. Even so, it sustained Thomas's argument, raised in a reply brief, that "any decree of partition and distribution . . . must specify that the assets are to be distributed to the decedent Leah[]'s heirs according to their respective shares of the estate, rather than to [Hoyl]."[4] *Id.* As a result, it reversed the Turnover Order as to Thomas's U.S. savings bonds, modified it "to order Thomas to turn over the designated amounts/values to Leah's heirs or devisees as identified by Hoyl as Administratrix," and affirmed the Turnover Order in all other respects, as modified. *Id.* at *4. The Dallas Court's mandate issued on June 3, 2021. No petition for review was filed.

---

[4]On Hoyl's sworn application to determine heirship, the trial court had entered judgment declaring Leah's heirs.

6

Before the mandate issued, and even though the Dallas Court's judgment had already modified and affirmed the Turnover Order, the trial court sent a letter stating that it too would modify the Turnover Order to exclude the U.S. savings bonds in accordance with the Dallas Court's opinion. On June 3, the trial court denied the bill of review. On June 16, although not required due to the Dallas Court's opinion, judgment, and mandate, the trial court entered a new turnover order (Amended Turnover Order) that ordered sums representing Leah's estate's interest in the Fidelity individual stock account, Rollover IRA, and Roth IRA to be turned over to Leah's three daughters. The Amended Turnover Order further stated that the "255 US savings bonds . . . [were] removed from the turnover order." Thomas filed a motion for a new trial, which was denied by the trial court.

On appeal, Thomas argues that the trial court erred by ordering turnover of the Fidelity individual account, Rollover IRA, and Roth IRA—issues we find were finally determined by the Dallas Court. Thomas also argues that the trial court erred by overruling the bill of review because (a) it considered the Inventory 2 Approval Order as a "title adjudication," (b) it entered multiple judgments requiring transfer of property "based upon the false finding and belief that an order approving an inventory adjudicated title," and (c) it issued a lien against homestead property. We find no abuse of discretion in the trial court's denial of the bill of review. Last, Thomas argues that the trial court erred by "disregarding the *judgment declaring heirship*" and ordering him to turn over property to Leah's "daughters without due process that included [his] share of the estate." We conclude that this last issue is not preserved for our review.

7

**II.     Thomas's Complaints About the Fidelity Individual Account, Rollover IRA, and Roth IRA Are Governed by the Law of the Case Doctrine**

Utilizing different legal theories, Thomas complains of the inclusion of the Fidelity individual account, Rollover IRA, and Roth IRA in the Amended Turnover Order.  We decline to address Thomas's legal theories because the Dallas Court affirmed the Turnover Order with respect to those items, and its opinion became the law of the case.[5]  Under the law-of-the-case doctrine, "a decision rendered in a former appeal . . . is generally binding in a later appeal of the same case."  *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012) (citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)).  The Texas Supreme Court has described the doctrine as follows:

> The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.  By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency.  The doctrine is based on public policy and is aimed at putting an end to litigation.

*Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) (citations omitted)).  The doctrine may apply even when the appeal does not reach the court of last resort.  *See City of Houston v. Precast Structures, Inc.*, 60 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (holding that, when losing party accepts remand instead of furthering appeal, court of appeals decision becomes law of the case); *Paradigm Oil*, 372 S.W.3d at 182.

---

[5]Thomas did not file a petition for discretionary review from the Dallas Court's determinations.

Thomas's first appeal to the Dallas Court yielded the result that Hoyl's inventory properly included the Rollover IRA and Roth IRA. After Hoyl filed Inventory 2, which listed the Fidelity individual account, Rollover IRA, and Roth IRA, the trial court entered the Inventory 2 Approval Order and the Turnover Order. Thomas's second appeal to the Dallas Court resulted in the conclusion that those items were properly included in the Turnover Order, and that portion of the Turnover Order was affirmed by the Dallas Court. As a result, the propriety of the inclusion in a turnover order of the Fidelity individual account, Rollover IRA, and Roth IRA was fully adjudicated by the Dallas Court, and we decline to revisit the issue. We overrule Thomas's first point of error.[6]

## III.    The Bill of Review Was Properly Denied

Next, we address Thomas's complaint that the trial court erred by denying the bill of review challenging the 2019 Judgments, the Inventory 2 Approval Order, and "all other orders or judgments relying on [Inventory 2]." It is undisputed that the 2019 Judgments were final orders that were never timely appealed. The Inventory 2 Approval Order was also a final, appealable judgment. *See Garner v. Long*, 106 S.W.3d 260, 266–67 (Tex. App.—Fort Worth 2003, no pet.) (finding that trial court's approval of an inventory, appraisement, and list of claims "conclusively disposed of that phase of the proceeding" and because Wife never appealed the approved inventory, "the court's determination [was] final and binding") (citing *Riggs v. Tech/III, Inc.*, 836 S.W.2d 302, 304 (Tex. App.—Dallas 1992, no writ) ("holding that purpose of appellate deadlines is to set a time when a successful litigant will know that judgment is final and no

---

[6]We also overrule what Thomas has labeled as "Issue 3" in his appellate brief, complaining of the inclusion of the Fidelity individual account, Rollover IRA, and Roth IRA as "non-probate assets."

longer subject to further review or modification"); *Richards Mfg. Co. v. Aspromonte*, 557 S.W.2d 543, 549 (Tex. App.—Houston [1st Dist.] 1977, no writ) ("stating that there is 'no essential difference between a case where a judgment has become final by failure to appeal, and one where the judgment has been affirmed on appeal'"). Although Thomas appealed the Turnover Order, which relied on Inventory 2, he never appealed the Inventory 2 Approval Order.[7] *See Estate of Tillotson*, 2021 WL 1034842, at *1.

Even so, "[a] bill of review is brought as a direct attack on a judgment that is no longer appealable or subject to a motion for new trial." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015) (quoting *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010)). The Texas Estates Code provides for a statutory bill of review. Under Section 55.251(a), "[a]n interested person may, by a bill of review filed in the court in which the probate proceedings were held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment, as applicable." TEX. EST. CODE ANN. § 55.251(a).[8]

## A. Standard of Review

Courts have long recognized bills of review rooted in general principles of equity or as prescribed by the Legislature, but courts do not readily grant them "[b]ecause it is fundamentally important in the administration of justice that some finality be accorded to judgments." *Valdez*, 465 S.W.3d at 226 (alteration in original) (quoting *Alexander v. Hagedorn*, 226 S.W.2d 996, 998

---

[7]Because the Inventory 2 Approval Order was final and not timely appealed, we overrule Thomas's arguments suggesting that a third amended inventory was required.

[8]"A bill of review to revise and correct an order or judgment may not be filed more than two years after the date of the order or judgment, as applicable." TEX. EST. CODE ANN. § 55.251(b).

(Tex. 1950)); *see Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940) ("noting that a bill of review requires 'something more than injustice'"). As a result, both Section 55.251 and its predecessor require a showing of "'substantial error' in a prior decision, order, or judgment." *Estate of Kam*, No. 05-16-00126-CV, 2016 WL 7473905, at *4 (Tex. App.—Dallas Dec. 29, 2016, pet. denied) (mem. op.) (citing *Valdez*, 465 S.W.3d at 226–27; *Estate of Jones*, 286 S.W.3d 98, 100 (Tex. App.—Dallas 2009, no pet.) ("to be entitled to relief by statutory bill of review of probate court's order or judgment, party must specifically allege and prove substantial error by trial court")).

"Courts do not look on bills of review with favor." *Id.* (citing *Law v. Law*, 792 S.W.2d 150, 153 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (citing *Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940)). "[T]he grounds on which they are granted are narrow and restricted." *Id.* (citing *Bakali v. Bakali*, 830 S.W.2d 251, 255 (Tex. App.—Dallas 1992, no writ); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("grounds upon which bill of review can be obtained are narrow because procedure conflicts with fundamental policy that judgments must become final at some point")). "The burden on a petitioner seeking a bill of review is heavy because it is fundamentally important that judgments be accorded some finality." *Id.* (citing *Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 763 (Tex. App.—Corpus Christi 2004, no pet.) ("bills of review are scrutinized by courts with 'extreme jealousy, and grounds on which interference will be allowed are narrow and restricted'" (quoting *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)))).

11

The denial of a statutory bill of review is reviewed under an abuse-of-discretion standard. *Id.* (citing *Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex. App.—Dallas 2008, pet. denied)). "We indulge every presumption in favor of the court's ruling." *Id.* (citing *Xiaodong Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). "A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles." *Id.* "The substantial error giving rise to a statutory bill of review 'need not have appeared on the face of the record and the movant may prove the error at trial by a preponderance of the evidence.'" *Id.* (quoting *Ablon v. Campbell*, 457 S.W.3d 604, 609 (Tex. App.—Dallas 2015, pet. denied)).

**B.      There Was No Abuse of Discretion in Denying the Bill of Review as to all Matters that Were or Could Have Been Raised Before the Dallas Court**

Thomas's bill of review raised complaints about (1) inclusion of the Fidelity individual stock account, Rollover IRA, and Roth IRA, (2) the alleged "fallacy that an Estate inventory establishes title," and (3) the judgment imposing a lien on property Thomas claims is homestead.[9]  We find that trial court did not abuse its discretion in denying the bill of review because Thomas failed to meet his burden to show substantial error.

By the time the trial court denied Thomas's bill of review, the Dallas Court's mandate had issued in both appeals.  "A mandate is an appellate court's formal command requiring the lower court to comply with the appellate court's judgment." *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 699 (Tex. App.—Dallas 2019, no pet.).  "The scope of the mandate is determined

---

[9]Thomas also complains about the inclusion of the U.S. savings bonds in Inventory 2, but we find this complaint moot since the U.S. savings bonds were expressly excluded as estate assets.

with reference to both the appellate court's opinion and the mandate itself." *Id.* (quoting *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.)). "The trial court, however, has no authority to take any action that is inconsistent with or beyond what is necessary to give full effect to the appellate court's judgment and mandate."[10]  *Id.* "[T]he appellate court's judgment is final, 'not only in reference to the matters actually litigated, but as to all other matters that the parties might have litigated and had decided in the cause.'" *Id.* (quoting *Martin v. Credit Prot. Ass'n, Inc.*, 824 S.W.2d 254, 257 (Tex. App.—Dallas 1992, writ dism'd w.o.j.)); *see Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, No. 03-18-00617-CV, 2019 WL 3756485, at *2 (Tex. App.—Austin Aug. 9, 2019, no pet.) (mem. op.) (citing *Woody K. Lesikar Special Tr. v. Moon*, No. 14-10-00119-CV, 2011 WL 3447491, at *8 (Tex. App.— Houston [14th Dist.] Aug. 9, 2011, pet. denied) (mem. op.)).  "A party cannot try his action in pieces." *Martin v. Credit Prot. Ass'n, Inc.*, 824 S.W.2d 254, 257 (Tex. App.—Dallas 1992, writ dism'd w.o.j.) (quoting *Corcanges v. Childress*, 280 S.W. 892, 894 (Tex. App.—Fort Worth 1926, no writ)).

Before its denial, the Dallas Court had already decided most of the issues raised in the bill of review.  As a result of both appeals, the Dallas Court had concluded that the Fidelity individual stock account, Rollover IRA, and Roth IRA were community property assets properly included in the inventory, had determined that Hoyl's claim for reimbursement against Bonnie

---

[10]"When an appellate court affirms a trial court's judgment or renders a judgment which the trial court should have rendered, that judgment becomes the judgment of both courts."  *Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex. 1987).

View was proper,[11] and had affirmed the Turnover Over based on Inventory 2 after removing the U.S. bonds and modifying the order to require distribution to Leah's heirs. *See Estate of Tillotson*, 2021 WL 1034842, at *4; *Estate of Tillotson*, 2020 WL 7767937, at *3, *8. As a result, the trial court did not err in overruling the bill of review to the extent that it attacked matters that were raised or could have been raised in the Dallas Court.[12]

The Dallas Court's second opinion affirmed the majority of the Turnover Order, which relied on Inventory 2, the approval of which was never appealed. Because it could have been raised, Thomas's allegation that the trial court erred in entering the Turnover Order because it possessed an "incorrect and inaccurate belief that [Inventory 2] adjudicated title" was also properly overruled by the trial court.[13] Moreover, we find that this complaint lacks merit since there was no pending, legitimate dispute as to title of the items included in Inventory 2.[14]

---

[11]In the first appeal, the Dallas Court had affirmed the trial court's order approving an inventory filed by Hoyl listing a claim for reimbursement of $28,209.00 for contributions to Bonnie View, Thomas's separate property. *Estate of Tillotson*, 2020 WL 7767937, at *8–9.

[12]"In interpreting the mandate of an appellate court, the trial court looks not only to the mandate itself but also to the appellate court's opinion." *Truck Ins. Exch. v. Robertson*, 89 S.W.3d 261, 263 (Tex. App.—Fort Worth 2002, no pet.) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). "The trial court must observe and carry out the mandate of the court of appeals, and its orders carrying out the mandate are ministerial." *Id.*

[13]As a result, we overrule what Thomas has labeled as "Issue 2" in his appellate brief. To the extent that Thomas raises complaints about the initial and amended inventory, we find those complaints moot in light of the Inventory 2 Approval Order. We also find complaints alleging that the trial court was required to partition property before entering a Turnover Order were arguments that could have been, but were not, raised in the Dallas Court.

[14]Thomas is correct that, "[a]lthough the inventory of the estate filed in the probate court is not conclusive of the title to the property therein listed, it is prima facie evidence of that fact." *McKinley v. McKinley*, 496 S.W.2d 540, 542 (Tex. 1973). Even so, it is clear that the trial court did not decide a title dispute and that "[t]he order of the probate court approving an inventory and appraisement is not an adjudication of title to property." *Id.*; *see White v. Pope*, 664 S.W.2d 105, 107–08 (Tex. App.—Corpus Christi 1983, no writ). From our best reading of Thomas's brief, it appears his argument related to adjudication of title is linked to his complaint about the Fidelity individual stock account, Rollover IRA, and Roth IRA, which he characterizes as "non-probate" assets.

**C.** **We Cannot Say that the Trial Court Abused Its Discretion in Denying the Bill of Review Based on an Unasserted Homestead Claim**

"Homestead properties are afforded special and unique protections under the Texas Constitution." *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 588 (Tex. App.—Austin 2013, pet. denied). Texas homesteads are generally exempt from "forced sale, for the payments of all debts," except for those debts, such as encumbrances for purchase money, specifically enumerated in the Texas Constitution. TEX. CONST. art. XVI, § 50(a) (Supp.); *see* TEX. PROP. CODE ANN. § 41.001(b) (identifying "[e]ncumbrances that may be properly fixed on homestead property"). "[L]iens or like encumbrances upon a homestead that do not fall within the exceptions provided in art. 16, § 50 are void." *In re Marriage of Christodolou*, 383 S.W.3d 718, 721 (Tex. App.—Amarillo 2012, no pet.). In his next point, Thomas argues that he showed substantial error because the trial court imposed an equitable lien against property Thomas claimed was homestead for the first time in the bill of review.

Hoyl filed an application to impose an equitable lien and for turnover of property listed in Inventory 2, including the imposition of the lien on River Oaks, which was listed as community property. The record indicated that Thomas had other real property, including Bonnie View, and Thomas's response to Hoyl's motion failed to contain any argument as to why a lien on the River Oaks property should not be imposed. Although there was a hearing on the bill of review,

---

We also note that Thomas raises a novel argument on appeal that the affidavit attached to Inventory 2 was substantively defective. Because this argument was not made in the bill of review, we find the issue unpreserved. *See* TEX. R. APP. P. 33.1.

15

counsel argued, but did not submit evidence proving, that Thomas claimed River Oaks as his homestead.[15]

"Whether a property is a homestead is a question of fact." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 160 (Tex. 2015). "[T]he word 'home' is not necessarily synonymous with 'homestead.'" *Id.* "A claimant is entitled to only a single homestead at once." *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Silvers v. Welch*, 91 S.W.2d 686, 687 (Tex. [Comm'n Op.] 1936)). "[T]here is case law holding that inclusion of real property in the administrator's inventory is prima facie evidence that the property is not a homestead." *Caceres v. Graham*, 603 S.W.3d 849, 855 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "The plea of homestead is an affirmative defense, and the claimant bears the initial burden of proving the existence of the homestead." *Thomas*, 433 S.W.3d at 848 (citing *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972); *Watson v. Tipton*, 274 S.W.3d 791, 800 (Tex. App.—Fort Worth 2008, pet. denied)); *see Qui Phuoc Ho v. MacArthur Ranch, LLC*, No. 05-14-00741-CV, 2015 WL 5093273, at *5 (Tex. App.—Dallas Aug. 28, 2015, pet. denied) (mem. op.) ("A party claiming that property is homestead bears the burden of proof." (citing *Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App.—Dallas 2009, no pet.))). "Once a property is established as a homestead, the burden shifts to the party challenging a homestead claim to prove termination of homestead status 'by abandonment, alienation, or death.'" *Zorrilla*, 469 S.W.3d at 160 (quoting *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied)).

---

[15]The bill of review argued that the trial court's orders related to River Oaks were void "[i]f the land in controversy was the <u>homestead</u> of [Thomas]."

"The court may not assume facts to support a claim of homestead against the validity of an existing debt or lien." *Id.* at 160 (quoting *Hilliard v. Home Builders Supply Co.*, 399 S.W.2d 198, 201 (Tex. App.—Fort Worth 1966, writ ref'd n.r.e.)). "To sustain a homestead claim, there must be proof of overt acts of homestead usage and intent on the part of the owner to claim the land as homestead." *Qui Phuoc Ho*, 2015 WL 5093273, at *5. "The party asserting homestead also bears the burden of pleading the defense." *Id.* (citing *Bennett v. State Nat'l Bank, Odessa, Tex.*, 623 S.W.2d 719, 722 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) ("It is a firmly established principle of law that a plea of homestead is an affirmative defense and the burden of pleading and proving such defense rests upon the party asserting it.")). "Failure to plead the defense results in waiver." *Id.* (citing *Davis v. Crockett*, 398 S.W.2d 302, 306–07 (Tex. App.—Dallas 1965, no writ)); *see Zorrilla*, 469 S.W.3d at 159; *Watson v. Tipton*, 274 S.W.3d 791, 800 (Tex. App.—Fort Worth 2008, pet. denied).[16]

Thomas did not plead or prove the affirmative defense of homestead, which was not raised until he filed the bill of review. To prevail on the statutory bill of review, Thomas had to prove substantial error, but failed to introduce evidence from which the trial court could have determined a homestead claim. *See Zorrilla*, 469 S.W.3d at 160 (homestead right is not established in the absence of appropriate facts where there is evidence that a person owned other residential property); *Estate of Kam*, 2016 WL 7473905, at *5. Also, Thomas "had the burden to

---

[16]We recognize that, "[o]nce a property is impressed with homestead rights, the law presumes that the property continues as a homestead." *McNally v. McNally*, No. 02-18-00142-CV, 2020 WL 5241189, at *6 (Tex. App.— Fort Worth Sept. 3, 2020, pet. denied) (mem. op.) (citing *Marincasiu v. Drilling*, 441 S.W.3d 551, 559 (Tex. App.— El Paso 2014, pet. denied) (holding that, once property is shown to be a homestead, the constitutional homestead privilege against enumerated liens is presumed to exist unless lienholder proves termination of homestead status through abandonment, alienation, or death).

17

furnish this Court with a record supporting [his] allegations of error by the probate court in denying [the] statutory bill of review." *Id.* Our appellate record, which does not include hearings in the underlying proceeding conducted before the bill of review was filed, is insufficient for us to reach any conclusion other than the conclusion that the trial court did not abuse its discretion by overruling Thomas's bill of review on this point. *See id.* at \*7.

Having found that the trial court did not abuse its discretion in concluding that Thomas failed to prove substantial error, we overrule Thomas's complaints about the denial of his bill of review.

## IV.    Thomas Failed to Preserve His Last Point of Error

In his last point of error, Thomas raises a complaint about the trial court's Amended Turnover Order. The judgment declaring heirship listed Thomas and Leah's daughters—Hoyl, Jennifer Jill Sherrill, and Mary Melissa Sherrill Martin—as Leah's heirs. In the original Turnover Order, Thomas was to turn over sums representing the estate's one-half interest in certain community property "to the Administratix." The Dallas Court modified the Turnover Order to "the designated amounts/values to Leah's heirs or devisees as identified by Hoyl as Administratrix." *Estate of Tillotson*, 2021 WL 1034842, at \*4. The trial court then also modified the order to require Thomas to turnover assets "to the heirs designated below." In each designation, the trial court set forth the same sums included in the first Turnover Order for each line item but specified that the sums were to be turned over to Hoyl's daughters only. On appeal, even though Thomas retained the other one-half interest in the community property, Thomas argues that the trial court violated his due process rights by ordering him in the Amended

18

Turnover Order to turn over the estate's one-half interest to Leah's daughters without accounting for his share of the estate's interest as an heir.[17]

Appellees argue that this issue is not preserved for our review, and we agree. The Amended Turnover Order was entered June 16, 2021. Although Thomas filed a motion for a new trial, he failed to raise this issue with the trial court.[18] "In order to preserve a complaint for appellate review, the record must reflect that the 'complaint was made to the trial court by a timely request, objection, or motion' and that the trial court either 'ruled on the request, objection, or motion, either expressly or implicitly,' or 'refused to rule . . . and the complaining party objected to the refusal.'" *Matter of Marriage of Tyeskie*, 558 S.W.3d 719, 725 (Tex. App.—Texarkana 2018, pet. denied) (quoting TEX. R. APP. P. 33.1(a)) (citing *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003)) (finding that preservation is required to raise due process complaints related to turnover orders). "As an appellate court, we review a trial court's ruling or an objection to its refusal to rule." *Id.* (citing TEX. R. APP. P. 33.1(a)(2)). "Important prudential considerations underscore our rules on preservation. Requiring parties to raise complaints at trial conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds." *Id.* at 725–26 (quoting *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003)).

"Even constitutional claims are waived by failure to raise the complaint at trial." *Id.* (citing *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001)

---

[17]"If the deceased spouse is survived by a child or other descendant who is not also a child or other descendant of the surviving spouse, the deceased spouse's undivided one-half interest in the community estate passes to the deceased spouse's children or other descendants." TEX. EST. CODE ANN. § 201.003(c). For this reason, we find the trial court's Amended Turnover Order consistent with the Dallas Court's opinion and mandate.

[18]Since the bill of review was filed before the Amended Turnover Order, it did not include this issue.

(citing *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993))). "Additionally, to preserve error, '[c]omplaints and arguments on appeal must correspond with the complaint made at the trial court level.'" *Id.* (quoting *Ferrara v. Moore*, 318 S.W.3d 487, 496 (Tex. App.—Texarkana 2010, pet. denied)). "If an issue has not been preserved for appeal, we should not address it on the merits." *Id.* (quoting *Knoderer v. State Farm Lloyds*, 515 S.W.3d 21, 44 (Tex. App.—Texarkana 2017, pets. denied)). Because Thomas did not raise his complaint below, we find the issue unpreserved and overrule it.[19]

## V. Conclusion

We affirm the trial court's denial of Thomas's bill of review and the Amended Turnover Order and remand the case to the trial court for further proceedings necessary to the administration of Leah's estate.

Scott E. Stevens
Justice

Date Submitted:  March 22, 2022
Date Decided:  May 5, 2022

---

[19]We find our resolution of the issues discussed here dispositive of Thomas's remaining complaints. We also overrule (1) Thomas's complaint about the lack of findings of fact and conclusions of law because we find that they were unnecessary to the proper presentation of the case and (2) Thomas's complaints that the trial judge's alleged errors were "an Extension of her Hostility" toward him.